Harvey M. **MATUSOW**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 15527.

United States Court of Appeals
Fifth Circuit.

Jan. 27, 1956.

336

Stanley Faulkner, New York City, Joseph A. Calamia, El Paso, Tex., for appellant.

Holvey Williams, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Based upon an affidavit executed by him for use in the Court below followed by his testimony given at a hearing before the District Court upon motion for a new trial in a criminal case, recanting his former testimony, appellant, Harvey Matusow, was adjudged to be in contempt of court and sentenced to imprisonment therefor. This appeal presents the question whether the actions of appellant which form the basis of the contempt charged were committed in the actual presence of the Court so as to justify its proceeding summarily under Para-

graph (a) of Rule 42, Federal Rules of Criminal Procedure; or whether said actions required a plenary hearing as provided in Paragraph (b) of that rule, and if so, whether the proceedings as conducted by the Court squared with the requirements of Paragraph (b).[1]

At the trial of Clinton Jencks on an indictment charging him with filing a false Non-Communist Affidavit with the National Labor Relations Board, Matusow gave testimony for the Government. Jencks was convicted and we affirmed his conviction.[2]

Thereafter Jencks moved for a new trial on the ground of newly discovered evidence based entirely on an affidavit by Matusow in which he recanted important portions of his testimony given at the trial. Matusow had written a book in which he stated that he had, on numerous occasions, given false testimony against various persons including Jencks concerning their communist affiliations. The Matusow affidavit was attached as the sole basis of the motion for a new trial and, upon the hearing of that motion, Matusow testified that his previous testimony against Jencks had been largely false. Being of the opinion that Matusow's former testimony had been true, the District Court denied Jencks' motion and we affirmed[3] in an opinion in which we held that the District Court was justified in refusing to believe Matusow's affidavit and testimony of recantation. The evidence developed in that hearing with respect to the facts leading to Matusow's writing of the book and culminating in his affidavit and testimony of recantation are outlined in the latter opinion and no need would be served by reviewing them here. (See 226 F.2d 556 et seq.)

At the close of the hearing on Jencks' motion for a new trial on March 12, 1955 the Court called Matusow before the bench and said to him:

"Harvey Matusow, after listening attentively to your testimony and proceedings on this motion, I am thoroughly convinced that you are in contempt of this court in that you, alone or in conjunction with others, deliberately and maliciously and designedly schemed to obstruct justice in this Court, and in furtherance thereof have caused the filing of the affidavit in this cause and thereby obtained the hearing in this Court on the motion for a new trial which has just been concluded. By recanting your former testimony, given in this Court, which I believe in substance was true, you have, in my opinion, deliberately, designedly and maliciously attempted to obstruct the justice of this Court and have deliberately shown contempt for this Court by attempting to set aside the

---

1. "Rule 42. Criminal Contempt

   "(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

   "(b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

2. Jencks v. United States, 5 Cir., 226 F.2d 540.

3. Jencks v. United States, 5 Cir., 226 F.2d 553.

conviction heretofore had in this regard and obtain a new trial for Clinton E. Jencks. I am convinced from your actions, conduct and testimony, had and done in my presence during this hearing, that you have deliberately and maliciously obstructed the justice of this Court for the purpose of furthering your personal gain. * * * " 4

Following the foregoing statement the Court below stated further: "Before sentencing you, however, I will give you a hearing in this regard and permit you to present evidence in your behalf if you desire to do so. Do you want a hearing in this regard, or are you ready for me to act?" After Matusow had stated that he would like a hearing the Court responded that, under the Federal Rules of Criminal Procedure, appellant was entitled to "the essential facts constituting the criminal contempt and described as such in the statement I have just made", and that he would have the Clerk give him a copy of the statement. Matusow and his attorney conferred and all agreed that the hearing referred to would be had four days later, March 16th. Thereafter and before the hearing, a transcript of the above statement and what transpired between the Court and counsel in connection with it was served upon appellant as the notice of the contempt hearing.

At the hearing the Government introduced no proof and Matusow testified briefly and without cross-examination that he had not lied at the hearing on Jencks' motion for new trial, that he had not conspired with anyone or agreed with anyone to change his testimony for money or any valuable consideration, and denied generally the charges made against him by the Court. At the conclusion of the hearing (at which the transcript of the evidence upon the hearing of Jencks' motion for new trial was introduced by stipulation) the Court reiterated what it had theretofore stated and added that it was of the opinion that

Matusow had schemed with others to use and had actually used the court for the purpose of drawing public attention to his book, which actions the Court below concluded had been induced by the publisher of the book and by the attorney and officials of the International Union of Mine, Mill and Smelter Workers; and that Matusow had, "with full knowledge of the consequences, lent himself to this evil scheme for money and for notoriety". The facts will be set forth in more detail as the contentions of the parties are dealt with.

By appropriate objections and motions appellant challenged the proceeding on the ground that the Court below had not certified, as required by Paragraph (a) that the actions forming the basis of the contempt were committed in its presence; on the ground that the Court had already reached and announced its decision against appellant before the hearing was begun and that appellant was generally being denied the protection of the Bill of Rights; and on the ground that the contempt notice was not specific enough to apprise the appellant of the essential facts constituting the contempt charged or even to charge a criminal contempt. And appellant demanded that the Government be required to go forward with its evidence and assume the burden of proving his guilt beyond a reasonable doubt. Ruling against the appellant in each instance, the Court below adjudged Matusow guilty of contempt and sentenced him to three years' imprisonment.

Any consideration of a proceeding which brings a man's liberty into jeopardy begins with the assumption that he is entitled to the full protection of the Bill of Rights. Whoever would abridge those rights carries the burden of clear justification of such action, and each step in the process of abridgement will be yielded grudgingly.

The right to punish for contempt of court is a recognized exception which is as old as the Bill of Rights itself. It is born of necessity, and it has been recog-

4. See 226 F.2d 554.

nized from the beginning of the Republic that, " 'courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.' " [5] The right to punish summarily and without hearing is an ancient right. " 'If the contempt be committed in the face of the court, the offender may be instantly apprehended and imprisoned, at the discretion of the judges, without any further proof or examination.' " [6]

The Supreme Court [7] recently expressed the rule in these words: "The pith of this rather extraordinary power to punish without the formalities required by the Bill of Rights for the prosecution of federal crimes generally, is that the necessities of the administration of justice require such summary dealing with obstructions to it. It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage."

But this right to punish without observance of constitutional safeguards has never been permitted to exceed the absolute necessities of the situation,—"the least possible power adequate to the end proposed",—and the progressive tendency of Congress and the courts has been towards drawing closer the limitations upon that right. The power of courts to punish for contempt has been the subject of congressional definition since the Judiciary Act of 1789, which was in turn succeeded by the Act of March 2, 1831, 4 Stat. 487, becoming Section 268 of the Judicial Code and now codified as 18 U.S.C.A. §§ 401, 402. [8] Each of these Acts has tended towards more stringent restrictions upon the power of the courts, and the Act in its present form is set out in the footnote. [9]

The Supreme Court has had the limits of this power before it in a dozen cases and, from the beginning, much of the controversy has raged around whether the contempt charged was committed "in the presence of the court, or so near

5. Ex parte Terry, 1888, 128 U.S. 289, 303, 9 S.Ct. 77, 79, 32 L.Ed. 405, quoting from Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242.

6. Id., 128 U.S. at page 307, 9 S.Ct. at page 80, quoting from 4 Blackstone Commentaries 286.

7. Offutt v. United States, 1954, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11.

8. Nye v. United States, 1941, 313 U.S. 33, 45, 61 S.Ct. 810, 85 L.Ed. 1172.

9. 18 U.S.C.A. § 401:
"Power of court
"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—
"(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
"(2) Misbehavior of any of its officers in their official transactions;
"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. June 25, 1948, c. 645, 62 Stat. 701."
"§ 402. Contempts constituting crimes

"Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by fine or imprisonment, or both.

\*    \*    \*    \*    \*

"This section shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law. June 25, 1948, c. 645, 62 Stat. 701, amended May 24, 1949, c. 139, § 8(c), 63 Stat. 90."

thereto as to obstruct the administration of justice".[10] On the decision of this point depended whether the court below could punish summarily or was required to have a plenary hearing. That controversy has been reduced to more definite terms by Rule 42, Federal Rules of Criminal Procedure,[11] which became effective March 21, 1946. Our decision here will turn largely upon a construction of that rule. We must decide whether the contempt punished occurred in the actual presence of the Court so that it "saw or heard the conduct constituting the contempt", in which event punishment could be inflicted without a hearing, under Paragraph (a) of that rule; or whether the contempt was outside the scope of Paragraph (a) under the tests so carefully spelled out by its terms, so that it could be punished only after a hearing such as is provided in Paragraph (b) of the rule. The Court below announced before its decision that the contempt proceeding was being conducted under both paragraphs.[12]

It is manifest from the record that counsel and the Court started out on the assumption that the proceedings were under Paragraph (a) alone. The moment the hearing on the Jencks motion for a new trial was concluded, the Court had called appellant before it and stated,

"I am thoroughly convinced that you are in contempt of this court  *  *  *",  as set out supra. Although the proceedings then had (March 12th) were transcribed and served upon appellant as notice of a hearing which was actually held, the Government attorney wound up his extended opening argument near the beginning of that hearing of March 16th with these words: "As I said, we take the position here that you are acting under Section (a) in that all that you are hearing, all the evidence you have heard, happened here in your presence and in the presence of Matusow. You are merely drawing conclusions from that evidence, which all the cases permit you to do, but some of the judges have intimated that you should give them a hearing to rebut those inferences that you draw, and that is what we have done here today."

Responding to that argument appellant's attorney queried: "If the Court please, is it your ruling, then that you have already found this defendant guilty under 42(a) and that unless we proceed that your verdict will remain as it is? The Court: Yes." [13] The District Court never filed any certificate as required by Paragraph (a), and appellant objected to proceeding in the absence of the certificate. The Court, however, called attention to its oral statement above quoted

---

10. See e. g. Cooke v. United States, 1925, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767; Nye v. United States, supra; In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682; Sacher v. United States, 1952, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717, affirming, 2 Cir., 182 F.2d 416.

11. The Supreme Court in Offutt v. United States, supra, 348 U.S. 11, at pages 13–14, 75 S.Ct. at page 13, stated: "Rule 42(a) was not an innovation. It did not confer power upon district judges not possessed prior to March 21, 1946. 327 U.S. 821. 'This rule', the Advisory Committee on the rules of criminal procedure stated 'is substantially a restatement of existing law, Ex parte Terry, 128 U.S. 289 (9 S.Ct. 77, 32 L.Ed. 405); Cooke v. United States, 267 U.S. 517, 534 (45 S.Ct. 390, 394, 69 L.Ed. 767).'"

12. Towards the end of the extended argument preceding the introduction of evidence at the contempt hearing, government counsel stated: "Your honor, I want to clear the record. If I said we were proceeding solely under section (a) I didn't mean to, and I don't think I did". And the Court responded, "Well, the Court hasn't said it, but the Court thinks you are proceeding under both sections, * * * of rule 42 * * * and he wants counsel to understand that he is proceeding under both sections (a) and (b) * * *."

13. The attorney for the Government disavowed such a purpose; and he and the Court both made it plain that they felt that the proceeding was under both Sections (a) and (b) of the Rule, all as shown in Note 12 supra.

and the service upon appellant of the transcript of the proceedings of March 12th, and left the inference that this was sufficient compliance with the certificate requirement. We are assuming this to be true, and proceed to test whether the Court had the power to punish summarily under Paragraph (a).

It is necessary to consider other statements in the prepared findings which the Court read at the conclusion of the hearing on March 16th.[14] Those findings were made by the Court below necessarily in large part from evidence which was adduced at the original trial of Jencks and before his conviction. Some of those facts were brought out from Matusow himself, but others were established by the testimony of Nathan Witt, attorney of record for Jencks and also general attorney for the union and several other witnesses. They were drawn also from exhibits introduced by the parties to the original trial.

All of the dealings between Matusow, the attorney, the publisher and the officials of the union took place in New York or at other points far distant from the place of trial of the Jencks case.[15] They did not take place in the actual presence of the court and it was not possible for the judge to certify that he saw or heard that conduct or that it took place in his actual presence.

Moreover, the Court below was obviously influenced to decide that Matusow testified falsely at the hearing on the motion for new trial by evidence introduced at that hearing consisting of transcripts of evidence Matusow had given on other occasions, and also by witnesses who gave testimony tending to contradict that of Matusow. While Matusow was present during the entire hearing on the motion for new trial,—the Court required him to remain in the courtroom— he was present as an onlooker only and not as a participant. He did not have the privilege at that hearing concluding March 12th of cross-examining the witnesses or of attempting to refute what was said by any of them.

■ From this it is clear that the only thing the Court below could certify as having taken place in its actual presence, seen or heard by him, was the testimony of Matusow on the two trials. From this and from the other evidence it concluded that Matusow testified substantially truthfully at the original trial and falsely at the hearing of the motion for new trial. The other activities, found by the Court as the basis for its conclusion that the perjured testimony was given with the design of obstructing the functioning of the Court, took place out of the presence of the Court. Under those circumstances we cannot sustain the conviction of contempt under Paragraph (a) of the rule.

■ It is well settled that proof of perjury alone will not sustain a conviction for contempt, but misbehavior constituting obstruction of the court must also be established. "Perjury by a witness has been thought to be not enough

14. "I am firmly convinced * * * that Matusow, alone or with others, wilfully and nefariously and for the purpose of defrauding this Court and subverting the true course of the administration of justice and obstructing justice, schemed to and actually used this court of law as a forum for the purpose of calling public attention to a book purportedly written by Matusow entitled 'False Witness'. This Court finds the fact to be that as early as September 21, 1954, responsible officials of the International Union of Mine, Mill and Smelter Workers, under the guise of seeking evidence in Jencks' behalf, subsidized the writing and publication of this book by authorizing the expenditure of union funds for that purpose. This at a time when, from the evidence, Matusow had no intention of writing any such book as was here exhibited or of changing his testimony given in the Jencks trial. I find that this subsidation was deliberately done the more easily to persuade Matusow to lend himself to the perpetration of a fraud on this court by means of the filing of his recanting affidavit and his testimony given herein. I find that Matusow wilfully and with full knowledge of the consequences, lent himself to this evil scheme for money and for notoriety."

15. Cf. 226 F.2d at pages 556 et seq.

where the obstruction to judicial power is only that inherent in the wrong of testifying falsely. * * * For offenses of that order the remedy by indictment is appropriate and adequate." Clark v. United States, 1933, 289 U.S. 1, 11–12, 53 S.Ct. 465, 468, 77 L.Ed. 993. The same principle was well stated in Ex parte Hudgins, 1919, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656: "An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted—a principle which, applied to the subject in hand, exacts that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty." And the whole subject is fully dealt with recently in In re Michael, 1945, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30; and see also Sacher v. United States, supra.

At most, therefore, the only element of the offense which took place in the actual presence of the Court below was the false swearing of Matusow, and that was not enough to sustain the contempt conviction. We must look further and ascertain whether the record reflects a proper case under Rule 42(b) and whether the requirements of such a proceeding were observed.

Paragraph (b) covers all criminal contempts not coming within the purview of Paragraph (a). Paragraph (b) provides for notice, for trial by jury, "in any case in which an act of Congress so provides", for bail, and for the right to trial by an independent judge under the circumstances therein outlined. As shown above, that paragraph has been held to be but declaratory of the principles already enforced by the Supreme Court, and those court-made requirements must be examined to aid in the interpretation of the terms of the rule itself. A good starting point is the unanimous decision of the Supreme Court in the Michael case, supra, which was decided practically contemporaneously with the promulgation of the criminal rules.[16]

A federal district court had adjudged Michael, a trustee in bankruptcy, guilty of contempt for giving "false and evasive" testimony before a grand jury which "obstructed the said grand jury in its inquiry and the due administration of justice". The Court of Appeals for the third circuit had affirmed, 146 F.2d 627, and the Supreme Court reversed both judgments. The hearing had been held upon notice and order to show cause, and the Government had introduced the transcript of Michael's testimony before the grand jury and had presented other witnesses whose testimony tended to contradict that of Michael; but it had failed to produce any evidence of any misconduct beyond false swearing. This language, drawn together from pages 226, et seq. of 326 U.S., pages 79 et seq. of 66 S.Ct. of the opinion shows the basis of the rejection by the Supreme Court of the actions of the two lower courts:

"These unequivocal answers [given by Michael] were clear enough so that if they are shown to be false petitioner would clearly be guilty of perjury. But he could have been indicted for that offense, in which event a jury would have been the proper tribunal to say whether he or other witnesses told the truth. * * *

"Not very long ago we had occasion to point out that the Act of

16. The Michael case was decided Nov. 5, 1945; the Rules of Criminal Procedure had been adopted by the Supreme Court Dec. 26, 1944 and transmitted to the Attorney General on that date, who in turn had submitted them to Congress up-on its convening Jan. 3, 1945, and they became effective March 21, 1946. See 327 U.S. at pages 821 et seq. and page XVIII of Title 18 U.S.C.A., Federal Rules of Criminal Procedure.

1831, 4 Stat. 487, from which Sec. 268 of the Judicial Code [now 18 U. S.C. 401–2] derives, represented a deliberate Congressional purpose drastically to curtail the range of conduct which Courts could punish as contempt. \* \* \* But the references to that Act's history in the Nye case, supra, reveal a Congressional intent to safeguard constitutional procedures by limiting courts, as Congress is limited in contempt cases, to 'the least possible power adequate to the end proposed.' \* \* \* The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury. \* \* \*

"Here there was, at best, no element except perjury 'clearly shown.' \* \* \* In the instant case there was collateral inquiry; the testimony of other witnesses was invoked to convince the trial judge that petitioner was a perjurer. Only after determining from their testimony that petitioner had wilfully sworn falsely, did the Court conclude that petitioner 'was blocking the inquiry just as effectively by giving a false answer as refusing to give any at all.' This was the equivalent of saying that for perjury alone a witness may be punished for contempt. Sec. 268 is not an attempt to grant such power."

The Nye case,[17] so much cited by subsequent decisions, was to similar effect. Nye (with another) had been cited for contempt growing out of his actions fraudulently designed to accomplish the wrongful dismissal of a pending civil action and culminating in a letter to the District Court signed by the plaintiff and requesting such dismissal. Nye was or-

dered to show cause why he should not be punished for contempt and the District Court entered, after a hearing, an adjudication of contempt which was affirmed by the Court of Appeals of the Fourth Circuit, 113 F.2d 1006. The Supreme Court reversed, specifically overruled its decision in Toledo Newspaper Co. v. United States, 247 U.S. 402, 38 S.Ct. 560, 62 L.Ed. 1186, and held that the actions upon which the contempt judgment was predicated were outside the scope of the contempt statutes because they were not committed within the physical or geographical presence of the court. The history of the contempt statutes was developed and it was conceded in the Supreme Court opinion [313 U.S. 33, 61 S.Ct. 812] that the action of Nye " 'did obstruct and impede the due administration of justice \* \* \* [and] has caused a long delay, several hearings and enormous expense.' " The Court pointed out that Nye could have been dealt with under several criminal statutes.[18] Established principles governing the decision of that case were declared, from which we quote separated excerpts found on pages 47, 49, 51, et seq. of 313 U.S., on pages 815, 816, 817, et seq. of 61 S.Ct. of the opinion:

"The two sections of the Act of March 2, 1831 [now 18 U.S.C.A. 401–2] when read together, as they must be, clearly indicate that the category of criminal cases which could be tried without a jury was narrowly confined. That the previously undefined power of the courts was substantially curtailed by that Act was early recognized by lower federal courts. [Citing cases.] \* \* \*

"\* \* \* Yet in view of the history of those provisions, meticulous regard for those separate categories of offenses must be had, so that the instances where there is no right to jury trial will be narrowly restricted. \* \* \* The result will be that the offenses which Congress designated

---

17. Nye v. United States, 1941, 313 U.S. 33, 61 S.Ct. 810, 85 L.Ed. 1172.

18. E. g. Section 135 of the Criminal Code, now 18 U.S.C.A. §§ 1503–1505.

as true crimes under § 2 of the Act of March 2, 1831 will be absorbed as contempts wherever they may take place. We cannot by the process of interpretation obliterate the distinctions which Congress drew. * * *

"* * * Thus the legislative history of this statute and its career demonstrate that this case presents the question of correcting a plain misreading of language and history so as to give full respect to the meaning which Congress unmistakably intended the statute to have. * * * And they necessitate an adherence to the original construction of the statute so that, unless its requirements are clearly satisfied, an offense will be dealt with as the law deals with the run of illegal acts. Cf. Mr. Justice Holmes dissenting in Toledo Newspaper Co. v. United States, supra, 247 U.S. at pages 422 et seq., 38 S.Ct. at page 565, 62 L.Ed. 1186.

"The conduct of petitioners * * * was highly reprehensible. It is of a kind which corrupts the judicial process and impedes the administration of justice. But the fact that it is not reachable through the summary procedure of contempt does not mean that such conduct can proceed with impunity. Sec. 135 of the Criminal Code [now 18 U.S.C.A. 1503, et seq.], a descendant of § 2, of the Act of March 2, 1831, embraces a broad category of offenses. And certainly it cannot be denied that the conduct here in question comes far closer to the family of offenses there described than it does to the more limited classes of contempts described in § 268 of the Judicial Code. * * *

"The fact that in purpose and effect there was an obstruction in the administration of justice did not bring the condemned conduct within the vicinity of the court in any normal meaning of the term. It was not misbehavior in the vicinity of the court disrupting to quiet and order or actually interrupting the court in the conduct of its business. Cf. Ex parte Savin, [1889] 131 U.S. [267] at page 278, 9 S.Ct. [699] at page 702, 33 L.Ed. 150. Hence, it was not embraced within § 268 of the Judicial Code. If petitioners can be punished for their misconduct, it must be under the Criminal Code where they will be afforded the normal safeguards surrounding criminal prosecutions."

To these cases ought to be added the decision of the Supreme Court in In re Oliver, 1948, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682. That case involved a proceeding in the State Courts of Michigan wherein a conviction for contempt and affirmance by the State Supreme Court were set aside on the ground that due process of law had not been observed. The language applies equally, however, to cases under Rule 42 such as that now before us. Referring to the Cooke case, supra, the Supreme Court stated, 333 U. S. at pages 274 et seq., 68 S.Ct. at pages 508 et seq.: "There it was pointed out that for a court to exercise the extraordinary but narrowly limited power to punish for contempt without adequate notice and opportunity to be heard, the court-disturbing misconduct must not only occur in the court's immediate presence, but that the judge must have personal knowledge of it acquired by his own observation of the contemptuous conduct. This Court said that knowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense. Furthermore, the Court explained the Terry rule as reaching only such conduct as created 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow.'" * * *

"Except for a narrowly limited category of contempts, due process of law as explained in the Cooke case requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. The narrow exception to these due process requirements includes only charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent 'demoralization of the court's authority * * * before the public.' If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the Cooke case, that the accused be accorded notice and a fair hearing as above set out." [19]

This thesis was repeated in In re Murchison, 1955, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942. The contempt hearing was held upon notice but by the judge who had heard the allegedly perjured testimony while sitting as a one-man grand jury. The Supreme Court reversed the judgment of contempt affirmed by the Michigan Supreme Court, holding that the same judge could not sit at the trial and pass upon the evidence presented. Here is some of the language of the decision, 349 U.S. at page 136 et seq., 75 S.Ct. at page 625 et seq.: "A fair trial in a fair tribunal is a basic requirement of due process. * * * Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer. * * *

"As a practical matter it is difficult if not impossible for a judge to free himself from the influence of what took place in his 'grand-jury' secret session. His recollection of that is likely to weigh far more heavily with him than any testimony given in the open hearings. * * * Thus the judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of which could not be tested by adequate cross-examination."

The opinion thereupon speculates that the judge would most likely be a witness and would have to be subjected to cross-examination and rejected the whole idea that the same judge who had heard the perjured testimony could hear a contempt charge growing out of it.[20]

It is clear from these cases that the Supreme Court has demonstrated an undoubted tendency to relegate all doubtful cases to the processes of criminal prosecution and to observe, as far as may be, in the narrowly restricted area conceded to be covered by Rule 42(b), the protections given to defendants in criminal trials under the Bill of Rights. A court called upon to conduct such a proceeding, therefore, must determine at the outset whether the safeguards of the

19. It will be observed that the motion for new trial in the Jencks case had been completely heard and decided by the Court below before Matusow was called to the bar in connection with the contempt charge. He had testified freely and without evasion and the only "obstruction" which could be charged against him was that his recantation occasioned the filing of the motion and the consequent hearing and appeal and the delay this brought about in the disposition of the criminal charges against Jencks.

20. On the other hand, Mr. Justice Reed, 349 U.S. at pages 141, 142, 75 S.Ct. at page 628, in his dissent, stated categorically, "The simple fact is that in the federal courts we allow the same judge who hears the contempt and issues the certificate to punish it subsequently and summarily, but in this case we do not allow such punishment even after a full court trial."

Fifth Amendment,—grand jury indictment, freedom from double jeopardy and self-incrimination, and the observance of due process of law; and the protections of the Sixth Amendment,—the right to a speedy public trial before an impartial jury, to be informed of the nature and cause of the accusation, to assistance of counsel, and to be confronted with the witnesses against him—shall be accorded to one upon a charge under Paragraph (b) of the Rule. It must decide also whether traditional rights belonging to defendants in criminal trials, such as presumption of innocence and the requirement of proof beyond a reasonable doubt, apply in criminal contempt hearings.

Appellant invoked the protection of most of these time-honored safeguards, among them being his insistence that he was entitled to a jury trial. He calls our attention to the fact that some of the Supreme Court cases discussed supra emphasize the incongruity of the trial of a criminal contempt by a judge when the identical acts would subject the alleged contemnor to criminal prosecution with the right to a jury trial. Without question, the facts found by the District Court as quoted supra would, if proven, constitute a violation of the criminal statutes on the part of Matusow and all of those who conspired with him by way of inducing him to change his testimony.[21]

Appellant calls our attention, moreover, to the fact that Section 401 invests a court with the same power to punish disobedience of its orders and decrees as it does misbehavior in its presence which forms the basis of the charge before us. Such disobedience is, by Section 402 and 18 U.S.C.A. § 3691 to which it refers, made punishable only after trial by jury "if the act * * * be of such character as to constitute also a criminal offense under any statute of the United States * * *". Without question then, a person charged with disobedience of an order under such circumstances (subdivision (3) of Section 401) would be entitled to a jury trial. Appellant cogently argues that, by analogy and to achieve consistency, charged with contempt under subdivision (1) of Section 401, he would be equally entitled to a jury trial. On principle there would seem to be no sound reason why appellant would not be entitled to a jury trial, and much of the language of the cases cited in this opinion sustain appellant's argument; but the Supreme Court has not ruled authoritatively on the question.[22]

The foregoing discussion reveals that a number of serious questions were raised by appellants which warn against the exercise of a doubtful jurisdiction where the conventional criminal processes are plain and adequate; but our decision can be based on a few errors which stand out free from question under the

21. E. g. The statutes against perjury, 18 U.S.C.A. § 1621, against subordination of perjury, 18 U.S.C.A. § 1622, and against conspiring to commit those crimes, 18 U.S.C.A. § 371.

22. In United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, the Supreme Court held that trial without a jury was proper on the ground that the defendants "urge[d] only their right to a jury trial as provided in § 11 of the Norris-LaGuardia Act. But § 11 is not operative here * * *." 330 U.S. at page 298, 67 S.Ct. at page 698. Moreover, the opinion states, 330 U.S. at page 268, 67 S.Ct. at page 684, "The defendants thereupon pleaded not guilty and waived an advisory jury."

The argument advanced by appellant in favor of a jury trial and the other

safeguards of the Bill of Rights, as well as the argument against hearing of the contempt proceedings by the court below who had sat through the two Jencks trials is well set forth in the dissent of Mr. Justice Black in Sacher v. United States, 1952, 343 U.S. 1, 14, et seq., 72 S.Ct. 451, 96 L.Ed. 717. But see the arguments contra in Ex parte Grossman, 267 U.S. 87, 45 S.Ct. 332, 69 L.Ed. 527. The following general statement is taken from 4 Barron's Federal Practice & Procedure, Sec. 2428, p. 382:

"A criminal contempt, as has been shown in Sec. 2424, supra, may also involve the commission of an indictable offense. If such a contempt is committed in the actual presence of the court it may be punished summarily. Otherwise, the defendant may demand a jury trial."

terms of the Rule, the statutes themselves and the unequivocal holdings of the Supreme Court. It is clear that the notice of the contempt hearing served upon appellant did not inform him of the nature of the charges against him, did not, in the language of the rule, "state the essential facts constituting the criminal contempt charged". Assuming that the notice did sufficiently inform appellant of the essential facts constituting the other ingredient besides perjury, obstruction, it did not set forth the nature of the conspiracy charged against him, its terms, or the names of those with whom he was charged to have conspired.

Nor was appellant confronted with the witnesses against him or afforded the opportunity of cross-examination. The Court below had concluded that appellant committed perjury, not only from having heard him testify twice, but from testimony given in open court by other witnesses both at the trial of Jencks and on the hearing of the motion for new trial. Appellant was, under the authorities above discussed, entitled to have that testimony given in a plenary proceeding at which his attorney had the right of cross-examination.

It is equally clear that the Court below did not accord to appellant the right to a presumption of innocence and that it did not require proof of his guilt beyond a reasonable doubt. At the hearing of March 16th the Government did not put on any evidence at all, apparently relying altogether upon the recollection of the judge and the conclusion he had reached and already announced on March 12th. During the argument appellant's attorney reminded the Court that it had already proceeded to find appellant guilty of contempt and had left open only the matter of sentencing him. To this the Court replied, "That doesn't mean that if you had proper and sufficient evidence the Court might not reverse itself. He is just giving you the opportunity for a full hearing to present any evidence you might have." That attitude does not square with presumption of innocence or application of the rule requiring appel-

lant to be proven guilty beyond a reasonable doubt.

From the foregoing it is clear that a case was not developed against appellant under Paragraph (a) of the Rule and that the minimal procedural requirements of subdivision (b) were not observed. The judgment convicting appellant of contempt is therefore reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.