**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William SNYDER, Defendant-Appellant.**

**Nos. 74–1316, 74–1982.**

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1974.

Certiorari Denied March 24, 1975.

See 95 S.Ct. 1433.

---

Gary Weston, Birmingham, Ala. (Court-appointed), William Snyder, Ft. Lauderdale, Fla., Fred Blanton, Jr., Associate Counsel, Birmingham, Ala., for defendant-appellant.

Wayman G. Sherrer, U. S. Atty., Albert C. Bowen, Jr., Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Snyder was convicted by a jury on January 15, 1974, on one count of violating 18 U.S.C. § 1343 by using telephone communications in interstate commerce as part of a fraudulent scheme to obtain money. Snyder was later sentenced to three years' imprisonment. In connection with the preparation of a presentence report, Snyder submitted a false financial statement to the court. For this action, Snyder was held in contempt of court on March 28, 1974, and an additional sentence of six months was imposed. Snyder, in this appeal, contests both convictions. For the reasons discussed below, we affirm the fraud conviction and reverse the contempt citation.

## I. The Facts

The scheme in which Snyder participated is more thoroughly described in the opinion released today, affirming the conviction of Snyder's co-indictee, Lawrence C. King. *See* United States v. King, 5 Cir., 1974, 505 F.2d 602. Taken in the light most favorable to the Government, the evidence at trial established a scheme to defraud one Edward H. Fuller, Jr. in connection with the purported sale of an interest in Fuller's mobile portrait studio which, at the time, was located in Orlando, Florida. After being told that King and Snyder had found a purchaser for the trailer, and upon receiving a check and an option agreement apparently signed by Robert Waldorf, Fuller wired payments of $1,000 to Snyder and $500 to King as "commissions" for the sale of the trailer. Waldorf's check was worthless, and Snyder and King made a timely journey to Texas.

Snyder's role in the scheme was to solicit a "buyer" for the portrait trailer. Snyder had known William Robert Wal-

dorf for about five years, and asked Waldorf if he would sign an option agreement to "buy" an interest in a mobile portrait studio owned by Edward Fuller, as well as to sign a $4,000 check which would serve as earnest money. Waldorf testified that Snyder told him that, if Waldorf would do this, he would receive part of the money Fuller would pay King and Snyder. Waldorf had no intention of legitimately purchasing part of the business from Fuller because Waldorf had no money, and this fact was well known to Snyder. Snyder drew up the option agreement and left it with Waldorf, who had his girl friend sign his name both to the agreement and to the $4,000 check.

The letter containing the option agreement and check was received by Fuller on July 3, 1972, and on the same date Fuller sent the commission payments to Snyder and King via Western Union. On July 4, 1972, Snyder and King received their money orders. On July 6, 1972, Snyder called Fuller, and during the conversation it was agreed that Snyder, King and Fuller would meet in Orlando on July 10 to discuss business matters and the portrait studio. But that same day, July 6, Snyder and King left Florida and went to Texas, where they stayed together temporarily. Snyder, having so ignobly departed without paying any money to Waldorf, subsequently called Waldorf to tell him that King, and not he (Snyder), had absconded with all the money. Snyder was then informed by Waldorf that the fraud had been discovered, and that an enraged Fuller had gone to the authorities.

## II. The Fraud Conviction

A. Did the trial court err in not granting Snyder's motion for a continuance?

■ Prior to trial, Snyder requested that the court grant him a continuance so that he could call as his witness Lawrence King, who could not at that time be located. The reason for this

was that King, who had been indicted with Snyder, was a fugitive from justice. It is highly doubtful that King, who was taking pains to avoid invitations from the FBI to appear at the trial, would have favored Snyder with his presence. It borders on frivolity to assert error in the court's refusal to grant a defendant's motion for continuance so that he may call a fugitive co-indictee to appear on his behalf. The trial judge, to whom the granting or refusal of such a motion is a matter of discretion, clearly did not abuse his discretion in denying the motion.

B. Did the trial court err in refusing to grant a new trial after it referred to the indictment as a conspiracy indictment, and allowed the testimony of coconspirators to be heard, when only the substantive count of fraud was charged?

■ Snyder was indicted for a violation of 18 U.S.C. § 1343; there was no charge for conspiracy in violation of 18 U.S.C. § 371. During the trial, and in the presence of the jury, the trial judge erroneously stated that "the indictment is a conspiracy indictment." During its charge to the jury, however, the court recognized its error, and addressed the jury as follows:

Now, the indictment in this case charges the defendant with the crime of fraud by interstate communication or wire, by wire. And the defendant is not on trial in this case for the crime of conspiracy, as such. Tuesday, I think I may have given you the impression that this defendant was charged with the crime of conspiracy. It's not—this is not technically true. The crime charged is as I have explained.

■■ Snyder alleges that the use of the word conspiracy injected something so malodorous into the trial such as to have "poisoned" the jury's attitude toward appellant. Conspiracy is not an invective, however, and the court did not

commit reversible error by referring to Snyder as a conspirator or to the indictment as a conspiracy, even though no separate conspiracy indictment was entered. As we have said in another case which also involved a scheme in violation of 18 U.S.C. § 1343 but no conspiracy indictment, "The weakness of appellant's argument is that it overlooks the fact that joint participants in a crime may be denominated 'conspirators' and the joint act or scheme may be called a 'conspiracy' since such words do not lose all of their ordinary content merely because Congress has separately created a crime of conspiracy." Kumpe v. United States, 5 Cir., 1957, 250 F.2d 125, 126; see United States v. Hoffa, 6 Cir., 1965, 349 F.2d 20, 41, aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

■ Snyder also intimates, but does not directly contend, that there was some type of variance between the indictment and the evidence at trial resultant from proof of a conspiracy where no conspiracy indictment was entered. This is without merit, because the indictment charged precisely what was proved—a scheme involving three persons, King, Snyder and Waldorf, to defraud one Edward Fuller. Proof of joint action to defraud is tantamount to proof of a conspiracy, and appellant introduces merely a semantic quibble when he complains that although he was indicted for participation in a scheme to defraud, the evidence at trial indicated his involvement in a conspiracy to defraud.

■ The final allegation of error is described as follows. A person indicted with Snyder and King, William Waldorf, pled guilty to the charge and testified for the Government at Snyder's trial. Certain testimony by Waldorf regarding the statements of both Snyder and King were objected to as being hearsay. The objections were overruled by the trial court and the testimony ruled admissible under the coconspirator exception to the hearsay rule. The record makes obvious, as Snyder's counsel conceded at

oral argument, that the existence of the conspiracy was clearly established by independent, non-hearsay evidence. Notwithstanding this, Snyder protests the application of the coconspirator exception absent a conspiracy indictment.

■ Some defendants strongly protest the Government's use of the conspiracy statute, but Snyder seems to contend that unless a conspiracy indictment is entered, a defendant cannot fairly be convicted of a crime which, by its nature, denotes joint schemes and conspiratorial conduct. But the cases firmly establish that a conspiracy indictment is not necessary to sustain a substantive conviction. The admission of the hearsay testimony of a coconspirator does not depend on a conspiracy indictment: "The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis . . . ." United States v. Olweiss, 2 Cir., 1943, 138 F.2d 798, 800, cert. denied, 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047 (1944) (L. Hand, J.). As an opinion from the Fourth Circuit has pointedly commented:

It is true that the co-conspirators' exception cannot be invoked without a showing that the declarant was presently engaged in promoting the joint criminal enterprise. But where, as here, such a showing has been made, the principle is not rendered inapplicable merely because the accused has not been formally indicted for conspiracy. (Citations omitted)

United States v. Sapperstein, 4 Cir., 1963, 312 F.2d 694, 698.

Thus, in a case involving a conviction for mail fraud under 18 U.S.C. § 1341, where no conspiracy indictment was charged, the court noted:

The nature of proof in a scheme to defraud, involving two or more persons, is analogous to the nature of proof in a conspiracy. The acts and declarations of each party to the scheme made in furtherance or execu-

tion thereof are admissible against all. . . .

United States v. Grow, 4 Cir., 1968, 394 F.2d 182, 203, cert. denied, 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111.

■ In a recent case we found proper the use of the coconspirator's exception and upheld the propriety of admitting such testimony in a case where no conspiracy indictment was present. United States v. Williamson, 5 Cir., 1973, 482 F.2d 508; see also Kumpe v. United States, supra. But cf. United States v. Burke, 5 Cir., 1974, 495 F.2d 1226, 1232 n. 6. For other cases upholding the admission of coconspiratorial hearsay in the absence of a specific conspiracy charge, see, e. g., United States v. Sanders, 8 Cir., 1972, 463 F.2d 1086; United States v. Hoffa, 6 Cir., 1965, 349 F.2d 20, 41, aff'd, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). We emphasize, however, that it is still necessary to establish, by independent, non-hearsay evidence, both a joint criminal enterprise on the part of two or more individuals as well as a party's involvement in such conspiracy, before the coconspirator exception may be invoked. Moreover, to be admissible, such statements must be made in the course and furtherance of the conspiracy and prior to its termination. Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L. Ed. 790 (1949). Thus we hold here that the propriety of admitting testimony regarding the statements of coconspirators is not confined to cases wherein a formal conspiracy indictment is charged. Accordingly, the trial court was correct in denying the motions for a new trial.

C. Was evidence of another crime improperly admitted against Snyder?

■ Prior to trial, the court instructed that no mention be made of previous criminal proceedings in Memphis, Tennessee, involving Snyder and Waldorf. But during the course of the trial, an FBI agent inadvertently stated that he had previously interviewed Snyder "at the time he was under arrest in Memphis for another matter . . . ." Snyder's counsel immediately moved for a mistrial. It was unfortunate that this comment was made in the presence of the jury, but we find no merit to Snyder's contention that the court abused its discretion in denying the motion for the following reasons: (1) the comment appears to have been totally unintentional and, at worst, negligent; (2) the answer was in response to a question by defense counsel on voir dire examination of the agent; (3) the Government had proposed, prior to the questioning of the agent, that the jury be excluded, but defense counsel requested the voir dire examination so as to dispense with dismissing the jury; and (4) the court immediately instructed the jury, with the consent of defense counsel, that Snyder had been acquitted in the Memphis matter and that any arrest on an unrelated matter had no relevance to the present trial and could not be considered by the jury for any purpose.

D. Did the trial court erroneously deny Snyder's motion for verdict of acquittal?

■ Snyder claims his motion for a verdict of acquittal should have been granted because the only evidence of an interstate phone call by Snyder was one made by him on July 6, 1972, which was at a time after Snyder and King had received the "commission" money from Fuller. Unfortunately, appellant seems to have mistakenly assumed that absent his own interstate communication, he could not be convicted under 18 U.S.C. § 1343. However, to be guilty of violating 18 U.S.C. § 1343, one need not be proven to have actually participated in or initiated an interstate communication.

■ The evidence clearly showed that Snyder associated with King in a scheme to defraud, that he acted with Waldorf to that end, that communication with Fuller regarding the fraudulent scheme was contemplated, and that a party to the scheme actually did have interstate communication with the victim.

In a case involving a fraud by wire charge, the Second Circuit noted that while it was necessary to show that a defendant caused the use of the telephone, "It was not necessary, however, to establish that [appellant] directly participated in . . . use of the wires . . .. It was sufficient if [such communications] were the foreseeable result of [appellant's] acts." United States v. Houlihan, 2 Cir., 332 F.2d 8, 13, cert. denied, 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964). To the same effect, *see* Pereira v. United States, 347 U.S. 1, 7–10, 74 S.Ct. 358, 362–363, 98 L.Ed. 435 (1954); United States v. Conte, 6 Cir., 1965, 349 F.2d 304, 306. Thus, if King's calls to Fuller were the foreseeable result of the scheme in which Snyder participated— and they clearly were—Snyder is guilty of the substantive offense even if he made no calls himself. The trial court properly denied the motion for acquittal.

### E.  Miscellany

At Snyder's trial, coconspirator/witness Waldorf stated that he had pled guilty to the offense for which Snyder was being tried. The court gave no cautionary instruction to the jury, nor was one requested. Even though Snyder does not raise a claim of plain error in this regard, and even though his counsel at oral argument stated he felt the point unimportant, we have reviewed the record for the possibility of reversible error. After a careful examination of "all the facts and circumstances of the case in their proper context," we have concluded no reversible error is present. *See* United States v. King, 5 Cir., 1974, 505 F.2d 602.

### III.  The Contempt Citation

After Snyder was found guilty, he completed a financial report for the probation officer as part of the presentence investigation. Even though he had been defended by appointed counsel, Snyder falsely claimed assets of $68,000 and liabilities of only $6,300, apparently believing that if the court thought him to be a man of property, he would receive a lighter sentence. After Snyder was sentenced to three years' imprisonment, he moved to be allowed to appeal *in forma pauperis*. Noting from the financial statement that Snyder had assets of some worth, the court denied the motion. Snyder then moved to amend his financial statement, and was obliged to admit that he knowingly falsified the statement. The court ordered Snyder to show cause why he should not be held in contempt, and he was subsequently cited for contempt and sentenced to six months' imprisonment.

While courts cannot countenance behavior such as this, we must be equally unwilling to impose sanctions on individuals without the safeguard of public trial by jury. This court has had occasion to consider an analogous situation where prior statements were recanted. In Matusow v. United States, 5 Cir., 1956, 229 F.2d 335, after a conviction had been obtained against one Clinton Jencks, a key Government witness provided the defense with an affidavit repudiating his trial testimony. The defense moved for a new trial solely on the basis of this affidavit, and, at a hearing on the motion, Matusow reiterated in court the repudiation of his former testimony. The trial court refused to believe this recanting, and we found this belief justified. *See* Jencks v. United States, 5 Cir., 1955, 226 F.2d 553, rev'd, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). But the trial court later stated to Matusow, "[Y]ou have, in my opinion, deliberately, designedly and maliciously attempted to obstruct the justice of this Court . . .", and imprisoned him for contempt. We reversed that citation, noting that "this right to punish without observance of constitutional safeguards has never been permitted to exceed the absolute necessities of the situation . . ., and the progressive tendency of Congress and the courts has been towards drawing closer the limitations upon that right [to

punish for contempt]." *Matusow, supra,* 229 F.2d at 339.

The Supreme Court has held that, where there is no misconduct of any kind other than false swearing, use of the contempt power is improper, and that sanctions could be imposed only after bringing appropriate charges, if any, before a jury. In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945). If we were unable in *Matusow* to uphold the contempt sanction for false swearing, in court and under oath, directly affecting the fate of an accused, we are even more disinclined to sanction summary procedures for false swearing out of the presence of the court. In the words of the Supreme Court

> The fact that in purpose and effect there was an obstruction in the administration of justice did not bring the condemned conduct within the vicinity of the court in any normal meaning of the term. It was not misbehavior in the vicinity of the court disrupting to quiet and order or actually interrupting the court in the conduct of its business. (citation' omitted) Hence, it was not embraced within § 268 of the Judicial Code. [Now, 18 U.S.C. § 401, which delimits the contempt power of federal courts.] If petitioners can be punished for their misconduct, it must be under the Criminal Code where they will be afforded the normal safeguards surrounding criminal prosecutions.

Nye v. United States, 313 U.S. 33, 52–53, 61 S.Ct. 810, 817, 85 L.Ed. 1172 (1941). Moreover, in Ex Parte Hudgings, 249 U.S. 378, 383, 39 S.Ct. 337, 339, 63 L.Ed. 656 (1919), the Court held that an "obstructive tendency" must be "clearly shown" to justify use of the contempt power. Inasmuch as both Snyder and his partner-in-fraud King, though tried separately, received three-year sentences, it does not clearly appear that the court was actually hindered in passing sentence.

For these reasons, the contempt citation is reversed and remanded to the lower court with directions to dismiss the citation.

Affirmed in part; reversed in part.