**ANDREWS v. ANDREWS & ANDREWS, Inc.**

**No. 1991.**

District Court, E. D. New York.

Nov. 24, 1941.

6

Lotterman & Tepper, of New York City, for plaintiff G. D. Andrews.

Krause, Hirsch & Levin, of New York City (George J. Hirsch, of New York City, of counsel), for Julian E. Goldberg.

MOSCOWITZ, District Judge.

These are two motions; one, by the plaintiff G. D. Andrews for an order "adjudging Thomas J. McErlane and Julian E. Goldberg in contempt of court, directing their arrest and imprisonment until they shall have purged themselves of their contempt, and until they shall have paid the fine which may be imposed upon them, for the damages suffered by virtue of their misconduct." The other motion by Julian E. Goldberg for an order "quashing the service of the said order to show cause upon Julian E. Goldberg of 12 South 12th

Street, Philadelphia, Pennsylvania, and to dismiss the proceedings to punish said Julian E. Goldberg for contempt, upon the ground that the service of said order to show cause was defective, void and improper, in that the alleged service of said order to show cause was effected outside of the jurisdiction of the United States District Court for the Eastern District of New York, and outside of the State of New York, to wit, at the City of Philadelphia, State of Pennsylvania, and that by reason of said fact, this Court has no jurisdiction over the person of said Julian E. Goldberg."

Although the motion to quash was argued on September 8, 1941, on consent of the parties the briefs were not submitted until November 14, 1941.

A motion was made by the plaintiffs for a receiver of the assets of Andrews & Andrews, Inc., the defendants. The Court directed that notice of such application be given to all of the creditors on May 8, 1941, at two o'clock. Such notice was mailed to the creditors on May 5, 1941 by the plaintiffs attorneys.

At the hearings that were had before the Court a number of creditors were present, some in person and some through their attorneys. Those who wished to appear had their appearances noted by the reporter who was recording the proceedings. An examination of the papers discloses no appearance by Mr. McErlane. Mr. McErlane was present at one or more hearings.

G. D. Andrews, one of the plaintiffs, has submitted an affidavit, verified July 29, 1941, in which he states:

"*At the hearings, Mr. McErlane appeared personally, recorded his appearance upon the court records, addressed the Court on his own behalf, testified upon direct examination, submitted to cross-examination by the attorneys who appeared, and himself participated in the cross-examination of A. Laupheimer, one of the witnesses before the Court.* Furthermore, he was in court on June 24th, 1941, the date of the last hearing in this cause, when Judge Moscowitz advised counsel of the order which he proposed to enter, directed that the order be settled on notice, and fixed June 26th, 1941, as the date when the order would be settled and signed. By that order, the Court, among other things, adjourned sine die my application for the appointment of a receiver of the defendant herein, appointed A. Louis Oresman, Esq.

as an auditor, accountant and special master, and specifically

"'Ordered that pending further order of this Court, all interested parties herein and all other persons, firms, and corporations be and they hereby are restrained and enjoined from instituting any action or proceeding either in law or at equity against the defendant, from levying any warrant of attachment against the property and assets of the defendant, from filing any involuntary petition in bankruptcy against the defendant, or from maintaining any other legal process against the defendant or its property, real or personal, tangible or intangible.'

"Notwithstanding the explicit mandate contained in Judge Moscowitz's order, and on June 28th, 1941—only two days after Judge Moscowitz's order was entered—Thomas J. McErlane verified a petition which requested the United States District Court for the Eastern District of Pennsylvania, to appoint an ancillary receiver for the purpose of seizing property, assets and effects of Andrews & Andrews, Inc. in the State of Pennsylvania. *To that petition, McErlane annexed a certified copy of the order of Judge Moscowitz, revealing his complete and comprehensive knowledge of each and every term and provision contained therein. That petition by McErlane was filed by Julian E. Goldberg, as his attorney. Mr. Goldberg, having annexed a certified copy of Judge Moscowitz's decree to the petition which he filed, was likewise familiar with each and every term thereof.* Notwithstanding the stay contained in the order of Judge Moscowitz, both McErlane and Goldberg persisted in filing the petition and setting a day for the hearing thereon."

Sigmond J. Beck, an attorney associated with the firm of attorneys representing Mr. Goldberg upon the application to quash the service of the order to show cause, has submitted an affidavit, verified August 12, 1941, in which he states:

"That your deponent has examined the minutes of the proceedings had before this Court in the above entitled action and has likewise examined certain of the records of this Court. That such examination was made with particular reference to the statement contained in the affidavit of G. D. Andrews, verified July 29, 1941, in which said affidavit it is stated, among other things: 'Among those who appeared and became a party to the proceedings pending

before Judge Moscowitz, was one Thomas J. McErlane, of 3125 Tulip Street, Philadelphia, Pa., who asserted a claim against Andrews & Andrews, Inc. for $630.55', and as to that portion of the said affidavit which reads (being underscored in the original): 'At the hearings Mr. McErlane appeared personally, recorded his appearance upon the Court records, addressed the Court on his own behalf, testified upon direct examination, submitted to cross-examination by the attorneys who appeared, and himself participated in the cross-examination of A. Laupheimer, one of the witnesses before the Court.'

"That your deponent examined the minutes of the proceedings had on May 5th, May 8th, June 4th, June 20th and June 24, 1941.

"Deponent believes the first reference to the said McErlane is contained in the minutes of the June 4, 1941 proceedings. In those minutes reference is made to one 'Thomas J. McElroy', who deponent assumes was intended to refer to Thomas J. McErlane. At the hearing at that time, it appears that the said McErlane (or McElroy) was personally present in Court. As to *recording his appearance upon the Court records,* as stated in the affidavit of G. D. Andrews, and as to the statement that the said McErlane addressed the Court on his own behalf, it appears that Judge Moscowitz asked, in open Court, whether any of the people who had written him were in Court and then he asked the name of a person who responded, which name is recorded in the minutes as 'Thomas J. McElroy'. The said person was asked by the Court as to whether he was a creditor, to which he answered 'Yes', and stated the amount of his claim, and also in answer to a question from the Court as to where he was from, stated: 'Philadelphia'. He at that time described the services performed by him and the nature of the claim, similarly stating that he had written a letter to the Court. The Court asked if he understood what was going on, to which he answered in the affirmative, and when asked by the Court as to what his attitude toward the situation was, stated that he believed he would get nowhere unless a Receiver be appointed.

"As to the statement contained in the affidavit of G. D. Andrews that the said McErlane *testified upon direct examination* and *submitted to cross-examination,* it appears that on June 24, 1941, at a hearing before the Court, a person identified in the minutes as Mr. McLean, without having been sworn, was questioned by the attorneys present.

"As to the portion of the affidavit of G. D. Andrews which stated that the said McErlane *participated in the cross-examination* of one of the witnesses before the Court, the minutes of the hearing had on June 20, 1941, indicate that during the course of the examination of one A. Laudheimer (sic), 'A certain gentleman asked information or questions of the witness'. No further identification is contained in the minutes.

"That deponent examined the docket of the Court. That the said Thomas J. McErlane is not named as a party plaintiff or defendant. That no appearance was filed by or on behalf of the said McErlane, nor is his appearance noted at any hearing except as above set forth, which are not recorded as appearances, and that no pleadings were filed by the said McErlane, nor was any motion for leave to intervene recorded in any manner.

"That no appearance is recorded by Julian E. Goldberg in any capacity, his name not appearing except in the contempt proceedings."

■ Mr. McErlane was undoubtedly present because he answered some questions and, perhaps, asked some questions relating to the proceeding. This falls short of an "appearance" in its strictly legal and technical sense. The following quotations from Words and Phrases, Volume 3, Perm.Ed., pages 718, 719; 720, 721, 723 and 726, are enlightening as to what constitutes an "appearance":

"Surety company's response to informal letter from court held not 'appearance' so as to subject it to contempt proceeding for violation of order. In re Landau, 230 App. Div. 308, 243 N.Y.S. 732, 735."

"Stipulation, that motion to strike answer of nonresident defendant, by nonresident attorneys not licensed to practice in state, in mortgage foreclosure action, be heard on different date from that stated in notice of motion, was not an 'appearance' by defendant in that action, since he did not invoke action of court in anything. Stevens v. Jas. A. Smith Lumber Co., 54 S.D. 170, 222 N.W. 665."

"Under Bankruptcy Act, § 18 sub. b, 11 U.S.C.A. § 41, [sub. b] fixing the time for the bankrupt to appear and plead to the

petition, and section 18 sub. e, requiring the judge to make adjudication or dismiss the petition if no pleadings are filed the last day allowed. there can be no 'appearance,' which is defined as coming into court as a party to a suit, without 'pleading,' which is a written allegation of what is affirmed on one side and denied on the other. In re Puget Sound Engineering Co., D.C.Wash., 270 F. 353, 354."

"Appearance 'means being present at court, though, in common parlance, appearing for the defendant in an action or suit is sometimes regarded as nearly synonymous with "answering thereto." "Answer," in its proper sense, is to be distinguished from "appearance," in that "answer" properly means a counter statement of facts in the course of pleading; a confutation of what the other party has alleged. When "answer" is spoken of in legal proceedings in civil cases, it generally implies something which is written.' Larrabee v. Larrabee, 33 Me. 100, 102."

"A party denied leave to intervene in a bankruptcy proceeding, but who on various occasions addressed the court, did not thereby become a party so as to authorize the bankruptcy court in restraining him from taking proceedings affecting the orders or decrees of the bankruptcy court in other courts, as the casual presence of a litigant or attorney in the bankruptcy court is not an 'appearance.' In re Ohio Copper Mining Co., D.C.N.Y., 241 F. 711, 712."

"Under Gen.St.1923, § 9239, providing that defendant appears in action when he answers, demurs, or gives plaintiff written notice of his appearance, 'appearance' means general appearance and in absence thereof, party is not entitled to notice of subsequent proceedings. Haney v. Haney, 163 Minn. 114, 203 N.W. 614, 615."

"A request by attorneys, in an action to annul a marriage, to allow defendant an extension of time in which to plead, which for all that appears was not authorized, was not equivalent to an 'appearance' within Code Civ.Proc. § 1014. Benson v. Benson, 176 Cal. 649, 169 P. 369, 370.

"Where defendant, in a divorce action, accepted service of summons in another state by indorsing his acceptance at the bottom of the summons, in which indorsement was included a statement that he took '30 days from this date to answer or otherwise plead to the complaint filed herein,' held that, though mere acceptance of service was insufficient to give the court juris-diction to enter a personal judgment for alimony, the asking for or taking time to plead constituted an appearance sufficient to give the court jurisdiction. Myers v. Myers, 62 Utah 90, 218 P. 123, 124, 30 A.L.R. 74."

The fact that a layman, apparently inexperienced in Court proceedings, was present in Court as a creditor and was naturally interested in the proceedings, and in an informal way answered questions concerning the desirability of appointing a receiver of the defendant, or even asked a few questions of others relating thereto, should not be regarded as an "appearance."

It is undoubtedly true that a person may be bound by a proceeding without filing an answer, notice of appearance or by filing any papers in the action, or by making himself a party by participating as such in the action.

In this instance the Court desired to obtain the opinions of the creditors as to whether or not a receiver should be appointed of the defendants' assets. It wanted as much enlightenment as possible on that question and it was for that purpose that the Court directed that the attorneys for the plaintiffs send a notice of the hearings to all of the creditors. The fact that some of the creditors were in the Court Room and expressed opinions did not make them parties to the proceeding. It was the customary procedure under the old equity practice for the Court to make an order permitting a creditor to intervene in an equity receivership case but such order was in the discretion of the Court. Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides the circumstances under which intervention may be granted and the procedure. It must be recognized that a person can "appear" so as to be bound by a decree of the Court without an order of intervention.

The order to show cause that brought on the motion for contempt directed that the service be made either personally or by registered mail upon Messrs. McErlane and Goldberg in Philadelphia where they resided.

The plaintiffs seek to justify the service of the motion papers on Mr. McErlane in Philadelphia upon the claim that Mr. McErlane "appeared" in this action and was therefore bound by the order containing the injunctive provision and that

**10**

therefore he could be served outside of the State of New York. Plaintiffs further argue that Rule 4 subd. (e) and Rule 5 subd. (a) and (b) of the Federal Rules of Civil Procedure authorize such service out of the State. This contention is not correct.

 The fact that Mr. McErlane defaulted upon the motion to punish him for contempt does not give the Court jurisdiction over him. He was not a party to the proceeding and had not "appeared" therein and the service out of the State of the order to show cause was a nullity. Certainly, in the case of Mr. Goldberg, who at no time "appeared" in the action and at no time appeared as attorney for Mr. McErlane, the service upon him of the order to show cause was likewise a nullity.

 It is argued that with full knowledge of the injunctive provision, Mr. McErlane has made an application through his attorney, Mr. Goldberg, in the United States District Court for the Eastern District of Pennsylvania, for an order which, if granted, would violate the order of this Court, and it is argued by the plaintiff that in said application in the United States District Court for the Eastern District of Pennsylvania, Mr. McErlane seeks the appointment of an ancillary receiver of the defendants in the State of Pennsylvania, and that therefore both Messrs. McErlane and Goldberg submitted themselves to the jurisdiction of this Court. The position of the plaintiff in that respect is untenable. The proceeding for the appointment of a receiver in the Eastern District of Pennsylvania is not ancillary to this action as no receiver has been appointed in this district and the motion is held in abeyance pending the report of the Special Master appointed by this Court.

 It is true as claimed by the plaintiffs that if a person with knowledge of an order which restrained some action on the part of that person, even though he was not a party to the proceedings which resulted in the order, violated the order he would be guilty of contempt of Court.

In view of the fact that service of the process upon Messrs. McErlane and Goldberg was a nullity, this Court is not passing upon the question whether or not Messrs. McErlane and Goldberg, in submitting the application to the United States District Court for the Eastern District of Pennsylvania, violated the terms of the order made by this Court. Undoubtedly, the United States District Court for the Eastern District of Pennsylvania, if it decides that the appointment of a receiver would violate the order of this Court, will not appoint such receiver.

Service of the motion papers upon Mr. McErlane and Mr. Goldberg being without authority, such service will be quashed.

Settle order on notice.