**William H. DE PARCQ, Petitioner,**

v.

**The UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF IOWA and the Honorable William F. Riley, as Judge Thereof, Respondents.**

**No. 15507.**

United States Court of Appeals
Eighth Circuit.

Aug. 1, 1956.

S. P. Gislason, New Ulm, Minn. (Charles Alan Wright, Austin, Tex., and Donald T. Barbeau, Minneapolis, Minn., on the brief), for petitioner.

Roy L. Stephenson, U. S. Atty., Des Moines, Iowa (Robert J. Spayde and John C. Stevens, Asst. U. S. Attys., Des Moines, Iowa, on the brief), for respondents.

Edward S. White, Jr., Carroll, Iowa (Wendell B. Gibson, Des Moines, Iowa, on the brief), for amicus curiæ Iowa State Bar Ass'n.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

GARDNER, Chief Judge.

At all times pertinent to the issues here involved William H. DeParcq, petitioner herein, was a lawyer duly admitted to practice by the Supreme Court of the State of Minnesota, maintaining offices for the practice of his profession in the City of Minneapolis, Minnesota, and respondent United States District Court for the Southern District of Iowa is the federal court having jurisdiction in the Southern District of Iowa as provided by United States statute. 28 U.S.C.A. § 95.

On or about the 22nd day of November, 1952, one Clifford J. Dean suffered injuries which he asserted were due to negligence on the part of the Chicago Great Western Railway Company and he desired to bring suit against that company on account of the personal injuries suffered by him. He made inquiries, especially among railway employees, with reference to employing a competent lawyer to represent him in the matter of his claim for damages. The employees of whom he made inquiry recommended William H. DeParcq as a successful lawyer in personal injury actions. A companion of Dean offered to secure an

appointment with Mr. DeParcq. Dean was not solicited by or on behalf of DeParcq but at the telephone request of one of Dean's fellow workmen Mr. DeParcq conferred with Dean at his office at Minneapolis and entered into a written contract to represent Dean in the matter of his claim against the Chicago Great Western Railway Company for a contingent fee of one-third of the recovery. The contract was in writing but does not appear in the record and the testimony with reference to it is lacking in detail. Mr. DeParcq caused an investigation to be made concerning the facts. He did not bring action on Dean's claim but forwarded the claim and cause of action to J. Riley McManus, a lawyer duly admitted to practice in the state and federal courts of the State of Iowa, maintaining offices in the City of Des Moines, Iowa, who conducted some legal research and prepared a brief or memorandum of law with respect to the authorities and on the basis of his legal research decided that Dean has a good and meritorious cause of action, and thereafter McManus prepared, without any participation on the part of DeParcq, a complaint and caused same to be filed and suit to be instituted in the United States District Court for the Southern District of Iowa. DeParcq did not sign the complaint and it was not submitted to him but as a matter of professional courtesy McManus placed the name of DeParcq upon the complaint in typewriting as "Of Counsel". DeParcq neither requested his name to appear as "Of Counsel" nor had he any knowledge thereof until long after the complaint had been prepared and filed and suit had been instituted; he was never served with any responsive pleadings or other papers in the cause and had no further connection with the litigation which was conducted solely and exclusively by McManus; he never appeared in the action or conferred with Dean except on the 24th day of September, 1953, and never conducted any settlement negotiations nor took any depositions nor any steps whatsoever with reference to the prosecution of the claim, but he entrusted the handling of the action to McManus and at no time ever intended to try the cause or otherwise appear and participate in the trial or proceedings and never made any request, either written or oral or otherwise, for comity or for leave and permission to participate in the action.

Mr. DeParcq was not a member of the bar of the United States District Court for the Southern District of Iowa, nor was he a member of the bar of the State of Iowa and, in fact, was ineligible to become a member of the bar of the United States District Court for the Southern District of Iowa because by Rule 1 of that court it is provided that "Attorneys who are regularly admitted and licensed to practice before the Supreme Court of Iowa may be admitted to practice in the District upon motion, in open court, of any admitted attorney of the court, after satisfactory showing of good moral character of the applicant, and upon taking the oath, signing the roll of attorneys in the clerk's office, and paying the clerk a fee of two dollars. * * *" There is no provision in the rules of the United States District Court for the Southern District of Iowa by which a lawyer not duly admitted to practice by the Supreme Court of Iowa may be admitted to the bar of the United States District Court for the Southern District of Iowa. Rule 3 of the rules of that court, however, provides:

"Admission to Try Particular Case.

"All attorneys residing outside of the State of Iowa and having civil matters in the court shall associate with them a resident attorney on whom notice may be served and who shall have the authority to act for and on behalf of the client in all matters, including pretrial conferences and the trial of the case. Such resident attorney shall be a member of the bar of the District, shall sign the first pleading filed and continue in the matter unless other qualified resident counsel be substituted. Nonresident attorneys who have so associated with them a resident attorney shall be permitted to participate

in a particular case upon satisfactory showing of good moral character.

"Provided further that where the action is one to recover damages for personal injuries sustained in Iowa by one who at the time was a resident of Iowa or the action is one to recover damages for the death of a resident of Iowa resulting from personal injuries sustained in Iowa, the court may on its own motion, or on motion of a member of the bar of either District, before permitting a nonresident attorney to participate in the case, require a satisfactory showing that the connection of the said attorney, or the firm or attorney with which he is associated, was not occasioned or brought about in violation of the standards of conduct specified in Rule 8 hereof. The court as a part of said showing may require the plaintiff and the said attorney to appear and be examined under oath."

Purporting to act pursuant to the authority vested in respondent court by this Rule 3 the court issued an order reading as follows:

"Clifford J. Dean,

Plaintiff,

v.

Chicago, Great Western Railway Company,

Defendant.

"Order for Hearing on Application Under Rule 3 of the Rules of the United States District Courts for the Northern and Southern Districts of Iowa.

"It is hereby ordered that the 13th day of January, 1956, at 2:00 o'clock p. m. is hereby fixed as the time, and the Federal Court House at Des Moines, Iowa, is fixed as the place for the making of showings of non-resident attorneys under Rule 3, as amended, of the Local Rules for the United States District Courts for the Northern and Southern Districts of Iowa in cases pending in the Central Division of the Southern District of Iowa.

"It is further ordered that resident and non-resident attorneys now appearing as attorneys for and of counsel for the plaintiff in the above entitled case and the plaintiff shall appear at the time and place fixed above for the purpose of being examined under oath in regard to matters within the scope of said Rule 3, as amended, and that mailing to plaintiff's counsel now of record for plaintiff shall constitute notice to appear at the time and place stated above.

"It is further ordered that any examinations shall be conducted either by the United States Attorney for this District, or by one of his Assistants."

In response to this court order plaintiff Clifford J. Dean and his attorney, J. Riley McManus, appeared and were subjected to examination by the Assistant United States District Attorney, particularly with reference to the employment of DeParcq as plaintiff's attorney and his possible participation in the trial of the action. DeParcq was not served personally or otherwise within the Southern District of Iowa and did not personally appear in response to the foregoing order. The court expressed the view that: "He participates by being of counsel and signing the complaint, and I consider him, accordingly, a participant in the case, and I consider that his wilful failure and his refusal—in anticipation of what you say—not to appear here makes him in contempt of this Court." Mr. McManus then testified that: "His name was put on the complaint of counsel by me. He never signed the complaint. He never intended to come down here and take part in the trial of the case if the case was tried. I put his name there as a matter of courtesy to him as he had referred and sent the case down here to me. He sent the case down here to me because he said that he felt if he brought it up there it would be transferred down here anyhow, so he sent the case down

here for me to bring it and for me to try it. He has never been down here on it; has never had anything to do with the preparation of briefs or the complaint or any of the pleadings. He has had nothing to do with the case since he forwarded it to me on October 10th, 1953." The court, over the protest of Mr. McManus, announced that it would inquire into the relations between counsel appearing, plaintiff Dean and Mr. DeParcq, and requested the Assistant United States District Attorney to conduct the investigation. Subsequent to this hearing and under date of January 24, 1956, the court on its own motion entered its findings and order to show cause as follows:

"Clifford J. Dean,
 Plaintiff,
 v.
Chicago, Great Western
 Railway Company,
 Defendant.

"Order to Show Cause.

"The order of this court entered January 6, 1956, served upon plaintiff herein and his counsel of record, required them to appear before this court at Des Moines, Iowa, on January 13, 1956, at 2:00 o'clock p. m., to submit to examination under oath as to matters within the scope of Rule 3, as amended, of the Local Rules of the United States District Courts for the Northern and Southern Districts of Iowa, which provides as follows:

(In the interest of brevity Rule 3 is not here reprinted.)

"At the time and place stated, plaintiff appeared in person, as did James R. McManus and Alexis M. Hawkins, both of Des Moines, Iowa, who are counsel of record for plaintiff, but William H. DeParcq of Minneapolis, Minnesota, also counsel of record, failed to appear although duly notified. Mr. McManus stated to the court that it was the intention of said Mr. DeParcq not to appear for the hearing.

"The court finds from the testimony of plaintiff and James R. McManus, who appears of record as one of plaintiff's counsel, that William H. DeParcq is the only counsel in this action directly employed by plaintiff, and said William H. DeParcq in turn has employed James R. McManus to be associated with him as local counsel as permitted and required by Rule 3, above, and that William H. DeParcq occupies the position of forwarding attorney in respect of James R. McManus.

"The court further finds that the said James R. McManus was and is employed by William H. DeParcq in his capacity as forwarding attorney and that there is no contract, express or implied, between the plaintiff and James R. McManus or Alexis M. Hawkins, but that such employment of said James R. McManus and Alexis M. Hawkins as exists in this cause is not by plaintiff but by William H. DeParcq.

"The court further finds that said William H. DeParcq has wilfully failed to appear before this court on the 13th day of January, 1956, pursuant to the order of this court entered January 6, 1956, and has disobeyed and shown disrespect for the order of this court and should show cause, if any he has, why he, William H. DeParcq, should not be held in contempt, and be denied the right to continue to appear in this action as counsel for plaintiff, or otherwise to appear as attorney or counsel in any action or proceeding in the Southern District of Iowa, until he will have been purged of such contempt.

"It is therefore ordered and adjudged that William H. DeParcq is hereby directed to show cause, if any he has, why he, William H. DeParcq, should not be held in contempt of this court, and be denied the right further to appear or continue as attorney or counsel in this action, and be

further denied the right or privilege to appear as counsel in any action or proceeding in the Southern District of Iowa now pending, or hereafter, until he will have been purged of contempt.

"It is further ordered that hearing herein is fixed at 10:00 o'clock a. m., on the 2nd day of March, 1956. Said William H. DeParcq is granted until the 18th day of February, 1956, to file answer hereto.

"It is further ordered that a copy of this order shall be sent by registered mail to William H. DeParcq at his address of record and by regular mail to plaintiff and to all other counsel of record as presently disclosed on the records of this court."

In this state of the record petitioner initiated the present original proceeding in this court in the nature of an application for writ of prohibition. In response to his petition for permission to file petition for writ of prohibition this court entered the following order:

"The above entitled matter came before the undersigned Judges of the above named Court on the petition of William H. DeParcq for leave to file a petition for a Writ of Prohibition herein. The Court, and the undersigned judges thereof, having duly considered the matter,

"It is ordered:

"(1) That the petitioner be and he hereby is granted permission to file the petition for Writ of Prohibition attached hereto.

"(2) That said petition be heard before the United States Court of Appeals at the United States Court House and Custom House Building in the City of St. Louis, State of Missouri, on the 2nd day of May, 1956, at ten o'clock a. m., or as soon thereafter as the matter may be heard.

"(3) That all proceedings in the matters referred to in the said petition for Writ of Prohibition, and particularly the proceedings desig-

nated in the respondents' Order to Show Cause scheduled to be heard on March 2nd, 1956, and any and all other proceedings therein, are hereby stayed until the further order of this court.

"(4) Petitioner herein shall have 40 days within which to file a brief in support of the petition. The respondents shall have 40 days thereafter in which to file an answering brief. The petitioner shall then have 10 days in which to file a reply brief. Briefs may be in either typewritten or printed form, and three additional copies shall be furnished for the use of the court.

"(5) Service of this order shall be made upon the respondents by registered or certified mail."

The matter was placed upon the regular calendar of this court and counsel for the respective parties filed briefs and presented oral arguments.

The order entered by this court has not been assailed by motion or otherwise and there is no dispute as to the facts. The petition, which seems to embody a complete transcript of all the proceedings had and taken in the trial court, has not been controverted nor challenged by return, motion or otherwise, and all well-pleaded facts, as distinguished from conclusions of law, must be accepted by us as true. Matter of Indiana Transportation Co., 242 U.S. 281, 37 S.Ct. 126, 61 L.Ed. 301; State ex rel. Hall v. Burney, Mo.App., 84 S.W.2d 659; 73 C.J.S., Prohibition, § 29 (2), p. 108; 42 Am.Jur., Prohibition, Section 44, p. 179. The facts will be further developed in the course of this opinion.

The purported power of the trial court to discipline petitioner stems from Rule 3 of the Local Rules of the United States District Court for the Northern and Southern Districts of Iowa. The trend of modern controlling authority is to limit the contempt power of federal courts. 28 U.S.C.A. Section 2072; Cammer v. U. S., 350 U.S. 399, 76 S.Ct. 456; In re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30; Nye v. U. S., 313 U.S. 33,

61 S.Ct. 810, 85 L.Ed. 1172. The case of Cammer v. U. S., supra, was decided by the Supreme Court after the orders were issued and hearings held in this proceeding.

It is contended that because petitioner's name was typewritten upon the complaint as being of counsel in the case of Clifford J. Dean v. Chicago Great Western Railway Company he "participated" in the case and having so done, for contempt purposes, he was an officer of the court and subject to the court's jurisdiction. In Cammer v. U. S., supra [350 U. S. 399, 76 S.Ct. 459], in the course of the opinion it is said:

"There are strong reasons why attorneys should not be considered 'officers' under § 401(2). As we pointed out in the Nye case, the 1831 Act was promptly passed by the Congress after the impeachment proceedings against Judge Peck failed by a senatorial vote of 22 to 21. Judge Peck had sent a lawyer to jail and had taken away his right to practice as punishment for an alleged contempt. The contempt consisted of published criticism of Judge Peck's opinion in a case in which the convicted lawyer had appeared as counsel; he was also counsel in other pending cases involving similar issues. Those directing the impeachment proceedings, who later brought about the passage of the 1831 Act, expressed deep concern lest lawyers continue to be subjected to summary trials by judges without the safeguards of juries and regular court procedure. Congressman James Buchanan who made the last argument against Judge Peck stated:

" 'But what is the process in the case of contempts? Without either an information or an indictment, but merely on a simple rule to show cause, drawn up in any form the judge may think proper, a man is put upon his trial for an infamous offence, involving in its punishment the loss both of liberty and property. He is deprived both of petit jury and grand jury, and is tried by an angry adversary prepared to sacrifice him and his rights on the altar of his own vengeance.

\* \* \* \* \* \*

" 'I may be wrong, but I hold it to be the imperative duty of an attorney to protect the interests of his client out of court as well as in court.'

Again Mr. Buchanan said:

" 'I believe that I have as good a right to the exercise of my profession, as the mechanic has to follow his trade, or the merchant to engage in the pursuits of commerce. \* \* The public have almost as deep an interest in the independence of the bar as of the bench.'

"Such statements by the same man who reported the 1831 Act to the House of Representatives almost immediately after Judge Peck's acquittal are completely inconsistent with a purpose to treat lawyers as ' "officers" of the court' subject to summary punishment. We cannot hold that lawyers are subject to the precise kind of summary contempt power that the Act was designedly drawn to bar judges from exercising. Section 2 of that Act made ample provision for punishing corrupt efforts to influence, intimidate or impede juries. And Congress expressly provided that prosecution therefor be by indictment. Substantially the same provision has been a part of our law ever since. 18 U.S.C. § 1503, 18 U.S.C.A. § 1503. See also Fed.Rules Crim.Proc. 7(a). Of course it does not cover this case because there is no charge that petitioner attempted improperly to influence the jury or violate § 1503 in any other way. Had there been such a charge petitioner would have been entitled to a trial by jury after indictment by grand jury. We hold that a lawyer is not the kind of 'of-

ficer' who can be summarily tried for contempt under 18 U.S.C. § 401(2), 18 U.S.C.A. § 401(2)."

In the case of In re Michael, supra [326 U.S. 224, 66 S.Ct. 79], the court specifically pointed out that the 1831 Act "represented a deliberate Congressional purpose drastically to curtail the range of conduct which Courts could punish as contempt." And again, it is said the Act embodied a Congressional plan to limit the contempt power to " 'the least possible power adequate to the end proposed.' " With these admonitions in mind we turn to a consideration of the contentions urged by the respective parties in this proceeding.

 Rule 3 is vigorously assailed as being arbitrary, discriminatory, unreasonable, destructive of the rule of comity and ex post facto. We, however, deem it unnecessary to pass upon the validity of this rule because it is not applicable to every non-resident attorney but only such as seek to participate in the trial of a particular case. If petitioner did not seek to participate in the trial of this case then the rule could not be invoked. We are of the view that petitioner did not seek to participate in the trial of this case. This view is compelled, we think, by the admitted facts, and in this connection it is to be observed that this rule is described in its title as "Admission to *Try* Particular Case." (Emphasis supplied.) "Participate", as the word is used in this rule, obviously means to take part in the actual trial. Based on the conclusion that petitioner participated in the case within the meaning of this rule, the court held that he thereby became an "officer" of the court. However, we are of the view that Mr. DeParcq was not, for disciplinary purposes, an officer of the United States District Court for the Southern District of Iowa. Cammer v. U. S., supra. Indeed, he was not admitted to practice in that court and was ineligible for admission to practice because he had not been admitted to practice by the Supreme Court of Iowa. Again, as Mr. DeParcq was not an officer of the court and was not served with any process within the territorial jurisdiction of the court and had not voluntarily appeared, the court was without jurisdiction of his person. Rule 4(f), Federal Rules of Civil Procedure, 28 U.S.C.A.; In re Graves, D.C.N. D.Iowa, 29 F. 60; Mitchell v. Dexter, 1 Cir., 244 F. 926; Graber v. Graber, D. C., 93 F.Supp. 281; Andrews v. Andrews & Andrews, E.D.N.Y., 42 F.Supp. 5. This is on the assumption that the alleged contempt was a civil contempt. It embodies the elements which seem to characterize it as civil contempt rather than criminal contempt. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S. Ct. 492, 55 L.Ed. 797. The teaching of the Gompers case is to the effect that: (1) Refusal to do an act commanded is civil contempt, while doing a forbidden act is criminal contempt; (2) Punishment for criminal contempt is unconditional, while the judgment for civil contempt is conditional in nature and can be terminated if the contemnor purges himself of the contempt; (3) Civil contempt proceedings are entitled as a part of the main cause, while criminal contempt actions are brought in the name of the United States; and (4) The notice in a criminal contempt proceeding must state that the proceeding is criminal in nature. But if it be contended that the proceeding is for criminal contempt it need only be suggested that in such a proceeding there can be no summary punishment and the contemnor is entitled to all the normal safeguards surrounding criminal prosecutions, including trial by jury, so that the court was without authority to proceed regardless of whether the proceeding be considered civil or criminal. In re Michael, supra; Cammer v. U. S., supra; Nilva v. United States, 8 Cir., 227 F.2d 74.

Although the order of this court permitting the filing of petitioner's application for writ of prohibition was never challenged by motion or otherwise, and

the allegations of the petition stand admitted, it is now urged by the government that petitioner is not entitled to the remedy sought. We find it unnecessary to consider this contention in view of the present condition of the record. At the opening of the argument of this case counsel for petitioner announced that the case of Clifford J. Dean v. Chicago Great Western Railway Company had been duly settled by the parties thereto without the knowledge of petitioner or his counsel, and counsel for petitioner in substantiation of his statement produced a certified copy of the judgment of the District Court dismissing that action on its merits. Based on these facts it is argued that the present proceeding has become moot. If so, there would seem no longer to be any necessity for issuing writ of prohibition, and this drastic and extraordinary remedy should be granted sparingly and only where there is necessity therefor. Johnson v. Manhattan Ry. Co., 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331; Gladstein v. McLaughlin, 9 Cir., 230 F.2d 762. The contempt proceeding was a part of the action between Dean and the Chicago Great Western Railway Company and the termination of that action automatically renders the contempt proceeding moot. Gompers v. Buck's Stove & Range Co., supra; Leman v. Krentler-Arnold Co., 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 389; United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; People ex rel. Hess v. Finn, 176 Misc. 407, 27 N.Y.S.2d 80. In Gompers v. Buck's Stove & Range Co., supra [221 U.S. 418, 31 S.Ct. 502], it is said, "The present proceeding necessarily ended with the settlement of the main cause of which it is a part." It follows that the petition for writ of prohibition should be denied because not necessary as the contempt proceeding ended with the settlement of the case of Clifford J. Dean v. Chicago Great Western Railway Company.