## IN THE MATTER OF MICHAEL.

No. 38. Argued October 11, 12, 1945.—Decided November 5, 1945.

*Mr. Robert T. McCracken,* with whom *Messrs. Stanley F. Coar* and *D. H. Jenkins* were on the brief, for petitioner.

*Mr. Robert M. Hitchcock,* with whom *Acting Solicitor General Judson, Messrs. W. Marvin Smith, Robert S. Erdahl* and *Miss Beatrice Rosenberg* were on the brief, for the United States.

MR. JUSTICE BLACK delivered the opinion of the Court.

A Federal District Court, after a hearing, adjudged that the petitioner was guilty of contempt on findings that he had given "false and evasive" testimony before a Grand Jury which "obstructed the said Grand Jury in its inquiry and the due administration of justice." A sentence of six months imprisonment was imposed. The Circuit Court of Appeals reviewed the evidence, found that the petitioner had not been "contumacious or obstreperous," had not refused to answer questions, and that his testimony could not "fairly be characterized as unresponsive in failing to give direct answers to the questions asked him." But it accepted the District Court's finding that the petitioner's testimony as to relevant facts was false, and concluded that it was of a type tending to block the inquiry and consequently "an obstruction of the administration of justice" within the meaning of § 268 of the Judicial Code [1] so as to subject petitioner to the District Court's power to punish for contempt. 146 F. 2d 627. We granted certiorari to review this question, in view of the close similarity of the issues here to those decided in *Ex parte Hudgings,* 249 U. S. 378, a case in which the District Court was held to have exceeded its contempt power.

A brief summary of circumstances leading to the petitioner's conviction will help to focus the issues. The Grand

---

[1] Section 268 provides in part that the "power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, . . . and the disobedience or resistance by any . . . witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts."

Jury undertook a general investigation of frauds against
the United States which led to an inquiry concerning ad-
ministration of the reorganization of the Central Forging
Company under § 77 (b) of the Bankruptcy Act. The
petitioner, by appointment of a district judge, had been
serving as that company's trustee. While before the Grand
Jury he was repeatedly interrogated concerning payments
of various amounts made from the bankrupt's assets. He
was asked to explain the purposes for which numerous
checks had been drawn. After weeks of inquiry in which
he and others were interrogated about these matters, the
Court, on petition of the prosecution before the Grand
Jury, issued a rule to petitioner to show cause why an
order should not be made adjudging him in contempt of
court for obstructing the investigation. Upon trial by the
Court the transcript of petitioner's Grand Jury testimony
was offered in evidence. The Court then heard other wit-
nesses on behalf of the prosecution who testified to facts
which directly conflicted with the petitioner's explanations
before the Grand Jury. The District Court, disbelieving
petitioner and believing the other witnesses, made its find-
ing that petitioner's Grand Jury testimony had been false.
No witness was offered to indicate that the petitioner in
the Grand Jury room had been guilty of misconduct of any
kind other than false swearing. And a reading of the evi-
dence persuades us that the Circuit Court of Appeals cor-
rectly found that he had directly responded with unequiv-
ocal answers.[2] These unequivocal answers were clear
enough so that if they are shown to be false petitioner
would clearly be guilty of perjury. But he could have been

---

[2] It is true that when petitioner was first asked whether he drew
certain checks on specified dates he answered that he could not be
sure in view of the number of checks he drew. When the particular
checks were more specifically pointed out petitioner did offer explana-
tions, which though they might have been false, nevertheless consti-
tuted clearcut answers.

indicted for that offense, in which event a jury would have been the proper tribunal to say whether he or other witnesses told the truth. Our question is whether it was proper for the District Court to make its finding on that issue the crucial element in determining its power to try and convict petitioner for contempt.

Not very long ago we had occasion to point out that the Act of 1831, 4 Stat. 487, from which § 268 of the Judicial Code derives, represented a deliberate Congressional purpose drastically to curtail the range of conduct which courts could punish as contempt. *Nye* v. *United States*, 313 U. S. 33, 44–48.[3] True, the Act of 1831 carries upon its face the purpose to leave the courts ample power to protect the administration of justice against immediate interruption of its business. But the references to that Act's history in the *Nye* case, *supra*, reveal a Congressional intent to safeguard Constitutional procedures by limiting courts, as Congress is limited in contempt cases, to "the least possible power adequate to the end proposed." *Anderson* v. *Dunn*, 6 Wheat. 204, 231. The exercise by federal courts of any broader contempt power than this would permit too great inroads on the procedural safeguards of the Bill of Rights, since contempts are summary in their nature, and leave determination of guilt to a judge rather than a jury. It is in this Constitutional setting that we must resolve the issues here raised.

All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact-finding tribunal

---

[3] See also as to this historical purpose, Nelles and King, Contempt by Publication in the United States, 28 Col. L. Rev. 401 *et seq.;* 525 *et seq.;* Fox, The History of Contempt of Court (1927).

must hear both truthful and false witnesses. It is in this sense, doubtless, that this Court spoke when it decided that perjury alone does not constitute an "obstruction" which justifies exertion of the contempt power and that there "must be added to the essential elements of perjury under the general law the further element of obstruction to the Court in the performance of its duty." *Ex parte Hudgings, supra,* 382, 383, 384. And the Court added, "the presence of that element [obstruction] must clearly be shown in every case where the power to punish for contempt is exerted."

*Clark* v. *United States,* 289 U. S. 1, is a case in which the Court found that element "clearly shown." In that case, the Court found that a prospective juror had testified falsely in order to qualify despite the fact that she was a partisan who would vote for a verdict of not guilty regardless of evidence of guilt. It is difficult to conceive of a more effective obstruction to the judicial process than a juror who has prejudged the case. For this prevents the very formation of a proper judicial tribunal. As the Court said in the *Clark* case, "The doom of mere sterility was on the trial from the beginning." p. 11. Perjury was not even the basis of the conviction. The Court's opinion makes it clear that the obstruction would have been the same had the partisan plan to thwart justice been carried out without any swearing at all. Of course the mere fact that false swearing is an incident to the obstruction charged does not immunize the culprit from contempt proceedings. Certainly that position offers no support for the present conviction.

Here there was, at best, no element except perjury "clearly shown." Nor need we consider cases like *United States* v. *Appel,* 211 F. 495, 496, pressed upon us by the government. For there the Court thought that the testimony of Appel was "on its mere face, and without inquiry collaterally, . . . not a bona fide effort to answer the ques-

tions at all." In the instant case there was collateral inquiry; the testimony of other witnesses was invoked to convince the trial judge that petitioner was a perjurer. Only after determining from their testimony that petitioner had wilfully sworn falsely, did the Court conclude that petitioner was "blocking the inquiry just as effectively by giving a false answer as refusing to give any at all." This was the equivalent of saying that for perjury alone a witness may be punished for contempt. Sec. 268 is not an attempt to grant such power.

Nor can the conviction be upheld under that part of § 268 which authorizes punishment for contempts which consist of "the misbehavior of any of the officers of said courts in their official transactions." While the petitioner was a trustee, and we may assume an officer of the Court within the statutory meaning, he was not engaged in an "official transaction" as trustee when he testified before the Grand Jury in the course of a general inquiry. Whether he could be punished for contempt for giving perjured testimony in the course of proceedings directly involving administration of the estate is another matter not now before us.

The judgments of the Circuit Court of Appeals and the District Court are

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.