**John S. EDMUNDS, Petitioner,**

v.

**Robert Won Bae CHANG, Individually and in his capacity as Judge, First Circuit Court, State of Hawaii, Respondent.**

**Civ. No. 73–3926.**

United States District Court,
D. Hawaii.

Nov. 2, 1973.

David C. Schutter, Burnham H. Greeley, Padgett, Greeley, Marumoto & Steiner, Honolulu, Hawaii, for petitioner.

Robert P. Jaress, Deputy Atty. Gen., George Pai, Atty. Gen. of Hawaii, Honolulu, Hawaii, for respondent.

## DECISION AND ORDER

SAMUEL P. KING, District Judge.

Petitioner Edmunds is an attorney licensed in the State of Hawaii. Respondent Chang is a judge of the First Circuit Court of Hawaii. On January 23, 1973, Edmunds was representing a defendant in a criminal case before Judge Chang. During the course of the proceedings, he was found summarily to be in contempt of court. Later on the same day he was served with a written order and judgment of contempt, directing him to pay a fine of $25 within 48

hours.[1] Before the expiration of that time, Edmunds moved the court to reconsider its judgment, or in the alternative, to stay the order through January 30, so that he could seek appellate review.[2] On January 29, he was ordered to appear before Judge Chang four days later to show cause why he should not be held in further contempt for failure to comply with the original contempt order.

Direct appeal not being permitted,[3] Edmunds then sought a writ of prohibition from the Hawaii Supreme Court, and that court restrained Judge Chang from proceeding further while it considered the writ. The writ of prohibition was ultimately denied, in a 3–2 decision, and Edmunds is now before this court applying for a writ of Habeas Corpus under 28 U.S.C. § 2254.

Edmunds has exhausted his state remedies.

Still, the respondent argues that Edmunds cannot satisfy the requirements of § 2254[4] because "the sentence did not impose imprisonment."

The statute does not, on its face, require that there be a sentence of imprisonment before a federal court can assume habeas corpus jurisdiction. § 2254 refers simply to "a person in custody pursuant to the judgment of a State court". The meaning of the custody requirement has been the subject of protracted debate, but there has been a tendency in the decided cases not to impose too rigid a limitation on the boundaries of federal jurisdiction. In Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), the Supreme Court indicated that it "has generally looked to common-law usages and the history of habeas corpus both in England and in this country" to help determine availability of the writ. *Jones* emphasized the wide range of situations, extending even to child custody disputes, in which habeas corpus relief has been historically available. In this context,

### 1. ORDER AND JUDGMENT OF CONTEMPT

The trial of the above-entitled cause having duly commenced on Monday, January 22, 1973; and

At the commencement of the further trial on Tuesday, January 23, 1973, after the court bailiff had opened court and as the Court was in the process of noting the presence of defendants, [sic] counsel, etc., and before the Court was able to utter a single word, Mr. John S. Edmunds, attorney for defendant Steven M. Hayashida, having stood up and interrupted the proceedings and requested permission to approach the Bench; and

The Court having requested the said Mr. Edmunds to be seated and having denied permission to approach the Bench, and the said Mr. Edmunds having refused to be seated but having continued to request permission to approach the Bench; and

The Court thereafter having ordered said Mr. Edmunds to be seated, and the said Mr. Edmunds having failed to comply with the order of the Court; and

The Court having found Mr. Edmunds in Contempt of Court for failure to obey the order of the Court to be seated and having fined the said Mr. Edmunds the sum of twenty-five dollars ($25.00), payable within forty-eight (48) hours;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that based on the foregoing proceedings, the said Mr. John S. Edmunds is hereby found in Contempt of Court, and is hereby fined the sum of twenty-five dollars ($25.00), payable within forty-eight (48) hours from the filing of this Order and Judgment. [*See* file in State of Hawaii v. James Pokini, et al., Cr. No. 44262, First Circuit Court, State of Hawaii.]

2. The motion was based on two grounds:
   1) The judgment and order failed to specify the section of the contempt statute on which it purported to be based, although such specification is required by law.
   2) Petitioner's conduct was insufficient as a matter of law to constitute contempt.

Edmunds alleges that on January 26 he asked what action Judge Chang proposed to take on the motion, and was told "you will be informed."

3. Penal Code § 1077(5); Act 9, Session Laws of Hawaii, 1972.

4. 28 U.S.C. § 2254(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

the Court concluded that the imposition of "restraints not shared by the public generally", and not only actual confinement, could justify issuance of the writ.

Although it did not attempt a specific delineation of those "restraints", the Court in *Jones* unanimously held that a parolee although released from custody was sufficiently deprived of his liberty to have access to habeas corpus. The decisive factor is that the conditions of parole "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." Habeas corpus, furthermore,

> "is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose—the protection of individuals against erosion of their right to be free from wrongfull restraints upon their liberty." 371 U.S. 243, 83 S.Ct. 377.

A steady trend toward liberalization of the custody requirement has followed *Jones*. A particularly important factor in many of these cases has been that of providing prompt adjudication of the petitioner's constitutional claims, one of the fundamental purposes of habeas corpus. *See,* e. g., Peyton v. Rowe, 391 U. S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Perhaps even more importantly, there has been an expansion in the spirit of the law, in the attitudes with which federal habeas corpus is to be considered. In Harris v. Nelson, 394 U. S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969), the Court declared:

> The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected. 394 U.S. 291, 89 S.Ct. 1086.

It is in this spirit that the Court has proceeded in its recent examination of the custody requirement. In Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the petitioner was a former state prisoner who had been released after the expiration of his sentence. Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972) dealt with a military reservist on orders to report for active duty and seeking classification as a conscientious objector. He filed his petition in California, his home state; his "nominal custodian" was the commander of a personnel center in Indiana, where his records were kept. The petitioner "was never in Indiana or assigned there." Nevertheless, the Court found that "[t]he concepts of 'custody' and 'custodian' are sufficiently broad" to provide a basis both for habeas corpus and for jurisdiction in California. Significantly, none of the other three dissenting Justices joined with Justice Rehnquist in the view that the petitioner was not in custody "at all."

The nature of the restraints to which the petitioner here is subjected are surely as severe as those in *Strait*. It is not merely the original contempt citation which is before this court; Edmunds has been ordered to show cause why he should not be held in further contempt for failing to pay the fine imposed upon him. The consequences of the pending action could be grave. An attorney's reputation is his principal professional asset; the success of his efforts often depends upon a delicate balance of harmony with the courts. A judgment of criminal contempt is something far more than a mere "moral restraint" to one who occupies the status of an officer of the court. Moreover, under Hawaii law there is at least the potential for disciplinary action being taken against an attorney who is found in contempt.[5]

Finally, Edmunds points to very similar cases in which Judge Chang has found attorneys in contempt and then placed them in custody pending the payment either of the fine he has summari-

---

5. Rule 16, Unprofessional Conduct and Unauthorized Practice of Law, Rule of the Supreme Court of the State of Hawaii.

ly levied or of a cash bail he has imposed.[6]

The rationale employed by the Supreme Court in Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), finding "custody" where a habeas corpus petitioner has been released on his own recognizance, is just as compelling here:

Plainly, we would badly serve the purposes and the history of the writ to hold that under these circumstances the petitioner's failure to spend even 10 minutes in jail is enough to deprive the District Court of power to hear his constitutional claim. 411 U.S. 352–353, 93 S.Ct. 1575.

This steady widening of habeas corpus jurisdiction is underlined by the recent decision in Weiss v. Burr, 484 F.2d 973 (9th Cir., 1973). In *Weiss*, an attorney was cited on five separate contempt charges during the course of a state criminal trial. He sought habeas corpus relief, but it was denied in the District Court. The Court of Appeals, however, noted that "[t]he propriety of using a petition for habeas corpus to test the constitutionality of his convictions is unquestionable", despite the fact that he was sentenced merely to pay a fine on one of the counts.

Therefore, bearing in mind the spirit and the logic which higher courts have recently applied to habeas corpus, as well as the circumstances of this case, I find that the petitioner is sufficiently in custody for this court to consider the constitutionality of his conviction.

The events which led to petitioner's contempt citation are here set out in full:

BAILIFF: The Court of the Honorable Robert Won Bae Chang is now in session. Please be seated.

THE COURT: Please be seated.

MR. EDMUNDS: Your Honor,—

THE COURT: Please be seated.

MR. EDMUNDS: May I approach the bench, your Honor?

THE COURT: Please be seated.

MR. EDMUNDS: Your Honor, I have an—

THE COURT: Please be seated, Mr. Edmunds.

MR. EDMUNDS: —issue I would like to raise.

THE COURT: The Court orders you to be seated, Mr. Edmunds.

MR. EDMUNDS: Your Honor, I'd like the record—

THE COURT: If you do not be seated right now Mr. Edmunds, the Court will find you in contempt of Court.

MR. EDMUNDS: May I approach the bench, your Honor?

THE COURT: You are found in contempt of Court, Mr. Edmunds. The Court will stand at recess.

The contempt judgment entered by Judge Chang[7] recites that Edmunds "stood up and interrupted the proceedings and requested permission to approach the bench;" that permission was denied, and that Edmunds "failed to comply with the order of the [c]ourt" which directed him to be seated. The nature of the proceeding which Edmunds is alleged to have interrupted is not stated; the judgment merely says that the court "was in the process of noting the presence of defendants [sic], counsel, etc."

There is no question that the circuit courts of the state of Hawaii have statutory authority to punish some contempts summarily. Section 1077 of the state's recently adopted penal code[8] merely restates a judicial power which Blackstone thought "as ancient as the laws themselves" 4 Blackstone Commentaries 286. It might be pointed out that both the necessity for summary exercise of the power, and the assumption of its historical basis in the English common law,

---

6. *See* n. 9.

7. *Supra*, n. 1.

8. *Supra*, n. 3.

have been subjected to searching examination. *See, e. g.,* the dissenting opinion of Justice Black in Green v. United States, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958); Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); ABA Standards for Criminal Justice, The Function of the Trial Judge, Approved Draft, 1972, § 7.4. Nevertheless, the fact of the power remains.

■ It is also a power clearly reserved to the federal courts, under 18 U.S.C. § 401 and Rule 42(a), F.R.Cr.P. On both the state and federal levels, however, it must be ringed with constitutional inhibitions, since in the exercise of the power it is thought necessary to dispense with traditional safeguards afforded to those accused of all other offenses.

Rule 42(a), which authorizes summary punishment for contempt committed in the presence of the judge, does not confer a separate or expanded power on the federal courts. Its intent is merely "to make more explicit 'the prevailing usages at law' by which the statute has authorized punishment of contempts." Sacher v. United States, 343 U.S. 1, 7, 72 S.Ct. 451, 454, 96 L.Ed. 717 (1952). Moreover, its use is limited to "exceptional circumstances". Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

Thus, it is to § 401 that the federal courts must look for their contempt authority. However, since the Supreme Court has held that exercise of any broader contempt power than that allowed by the statute "would permit too great inroads on the procedural safeguards of the Bill of Rights," In Re Michael, 326 U.S. 224, 227, 66 S.Ct. 78, 79, 90 L.Ed. 30 (1945), the Court's decisions construing § 401 must be seen as marking the outer limits of state contempt power as well.

"Exceptional circumstances" were surely present in the early case of Ex Parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), which allowed punishment for contempt "without trial or further proof". In *Terry*, the wife of an attorney was ordered removed from the courtroom for disrupting the proceedings. As a marshal attempted to carry out the order, he was beaten and assaulted with a knife by the attorney. The attorney was subsequently cited for contempt.

■ In less egregious situations, the Court's historic mistrust of summary punishment has led it to circumscribe use of the "Terry rule". Since the justification for the summary contempt power is "the need for immediate penal vindication of the dignity of the court", Cooke v. United States, 267 U.S. 517, 536, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925), the power can only be used to remove or prevent an "obstruction" which is "clearly shown". Ex Parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656 (1919); In Re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30 (1945).

In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) further limits application of the rule to obstructions which present " 'an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public' that, if 'not instantly suppressed and punished, demoralization of the court's authority will follow'." *Id.* at 275, 68 S.Ct. at 508, quoting from Cooke v. United States, *supra.*

Such an "open threat" before the court can occur only where there is "misconduct . . . which disturbs the court's business . . . and where immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *Id.* at 275, 68 S.Ct. at 509. If the alleged misconduct is merely language, it " 'must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil . . ..' " In re Little, 404 U.S. 553, 555, 92 S.Ct. 659, 660, 30 L.

Ed.2d 708 (1972), quoting Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947).

What is particularly important in this case is that the alleged contemnor is an attorney who was engaged in the defense of a client. In Re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) involved an attorney who persisted in a line of questioning which the court had already ruled inadmissible. When he was halted by the judge, he insisted on his right to ask the questions, and he announced his intention to continue doing so unless stopped by a bailiff. A summary contempt judgment against him was reversed. The Supreme Court reasoned that he had not actually persisted to the point where the bailiff was forced to interrupt the trial, and his mere announcement of his intention to do so could not be enough of an obstruction to sustain a judgment of contempt. The Court added:

> The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty. 370 U.S. 236, 82 S.Ct. 1292.

■ A lawyer is certainly under a legal, ethical and moral duty to observe a proper courtroom decorum. But his duty to exert himself on behalf of his client, within the bounds of that decorum, is just as compelling. The ABA Standards for Criminal Justice, The Defense Function, Approved Draft, 1971, has this to say, in section 7.1(d), on the subject of courtroom decorum:

> The lawyer should comply promptly with all orders and directives of the court, but he has a duty to have the record reflect adverse rulings or judicial conduct which he considers prejudicial to his client's legitimate inter-

ests. He has a right to make respectful requests for reconsideration of adverse rulings.

■ If the entire line of cases in which the Supreme Court dealt with summary contempt leads inexorably to any single conclusion, it is this: because the Court is so wary of the power, and so conscious of its potential for abuse, it is determined, as it has reiterated time after time, to limit courts to "the least possible power adequate to the end proposed." Anderson v. Dunn, 6 Wheat. 204, 231 (19 U.S. 204), 5 L.Ed. 242 (1821), quoted in among others, In Re Michael, 326 U.S. 224, 66 S.Ct. 78, 90 L. Ed. 30 (1945); In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Cammer v. United States, 350 U.S. 399, 76 S.Ct. 456, 100 L.Ed. 474 (1956); Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965); Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

That potential for abuse has been realized often enough to draw the attention of commentators as well as of appellate courts. See, e. g., Homan, Abuse of Attorneys by Judges, 14 Clev.–Mar.L. Rev. 79 (1965). It may well have animated Edmunds as he rose to address the court. From the record here, it cannot be said that any such conern would have been ill-founded.[9]

This case does not concern the limits to which an attorney may go in protesting an adverse ruling. Rather, the focus is on what he may do to get a ruling in the first place, and to make the record which may be so crucial to his client's liberty. It is therefore unlike Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949), where a lawyer was cited for deliberately persisting in a line of argument excluded by the court, and only after he had "twice refused to heed the court's admonition not to argue the point."

9. Edmunds cites examples of this judge's behavior toward lawyers who are trying to state objections for the record. These examples include the judge declaring a recess while the lawyer was still speaking, and then calling a new case when the court reconvened, as well as instructing the court reporter not to take the statements of a lawyer addressing the court.

A court of law is not the personal fiefdom of the individual who happens to be sitting at the bench. The role of the lawyer defending one accused of crime is every bit as essential in our system of justice as that of the judge, and the courtroom is in many respects more the arena of the former than it is of the latter. If a lawyer can be denied the opportunity even to address the court on the subject of what he conceives to be valid objection, it is hard to imagine what part of his function as advocate is left to him.

He cannot be denied that opportunity, however, as the Supreme Court made perfectly clear in Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952):

> Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. 343 U.S. 9, 72 S.Ct. 455.

Edmunds' assertion that he spoke throughout in a "low and courteous tone" is not challenged. There is not the slightest indication that his conduct was in any way obstructive, or that it presented an immediate threat of obstruction. A judge who is looking for contempt will probably be inclined to find it, but the summary procedure provided by the Hawaii contempt statute cannot be used as authority for judges to overstep the constitutional limit of their power. The citation of contempt for an attorney's effort to speak before the court transgresses that limit.

It is therefore the holding of this court that petitioner John Edmunds was denied due process of law, as guaranteed to him by the Fourteenth Amendment to the Constitution of the United States.

It is ordered that the judgment and order of the First Circuit Court of the State of Hawaii, dated January 23, 1973, holding petitioner Edmunds in contempt of court, is void and of no force or effect.

It is also ordered that petitioner Edmunds be released from any further proceedings had under the aforesaid void order and judgment.