**C.F., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 82A04–8709–CR–276.

Court of Appeals of Indiana, Fourth District.

April 25, 1988.

Bruce Heathcotte, Heathcotte and Turpin, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

C.F. appeals her conviction for direct contempt for failure to fully answer questions propounded to her by the Vanderburgh Circuit Court grand jury.

We reverse.

Restated, the sole issue presented by this appeal is: whether a grand jury target witness is subject to contempt proceedings for answering "I don't know why I started the fire," when repeatedly asked "what was your reason or motive for starting the fire?"

In October, 1986, C.F., a night shift disc jockey at WYNG radio in Evansville, went to the station's basement early one morning and set the building on fire. Several minutes later she returned with a fire extinguisher and tried to extinguish the blaze. However, the smoke was too thick, she was unable to do so. In 1987, the Vanderburgh Circuit Court grand jury began investigating the fire. C.F. was granted use and derivative use immunity to obtain her testimony before the grand jury.

During her testimony C.F. was asked more than 20 times why she started the fire. C.F. gave no rational explanation, but kept responding as to her motive or reason, "I do not know why I started the fire." The trial court found C.F. in contempt then sentenced her to 90 days in the Vanderburgh County Jail, she then to be returned

to court upon completion of sentence "for the purposes of responding to the questions posed to her by the Grand Jury."

C.F. appeals.

Our Supreme Court has succinctly stated the standard of review in appeals involving direct contempt. It has said

> ... [O]ur standard of reviewing direct contempt proceedings requires this Court to accept as true the statement entered of record by the lower court of the matter constituting the contempt, and to interfere with the judgment only where it clearly appears alleged acts do not constitute contemptuous acts. *Grimm v. State* (1959), 240 Ind. 125, 162 N.E.2d 454; *Russell v. State* (1981), Ind.App., 428 N.E.2d 1271.

*In re: Caito* (1984), Ind., 459 N.E.2d 1179, 1182.

Regarding witnesses who testify under a grant of immunity, IC 35–34–2–8(c) provides

> (c) If a witness refuses to give evidence after he has been granted use immunity, he shall be brought before the court and the court shall proceed as if the witness had refused in open court.

IC 34–4–7–2 reads in part

> Every person who, being sworn to testify as a witness in any court of record, in any trial or proceeding therein, shall refuse to testify touching the same; ... shall be deemed guilty of a direct contempt thereof.

As to whether C.F.'s answers constituted contemptuous acts, i.e. evasive answers tantamount to a refusal to testify, the trial court determined

> (6) that her response to the question of why she started the fire is not a bona fide effort to answer the question and as such, constitutes an evasive answer subject to direct contempt.

(R. 24).

In *Ex Parte Hudgings* (1919), 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656, a witness at trial repeatedly testified he believed certain signatures were the writing of the persons named, but he could not so state from having seen those persons write "be-cause he could not recollect ever having seen them do so." *Hudgings,* 249 U.S. at 380; 39 S.Ct. at 338. The trial court jailed Hudgings for contempt. It believed Hudgings had committed perjury by giving an evasive answer by wilfully refusing to answer the question truthfully. He was to be committed until he had purged himself of the contempt for which he was being punished. The *Hudgings* court determined a court may punish such witness for contempt as well as perjury only when the act complained of amounts to an obstruction to the performance of judicial duty. The court noted although prior cases had treated perjury without any other element as adequate to sustain a punishment for contempt, these cases were mistaken because

> if the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purpose of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled.

*Id.*

In *In re Michael* (1945), 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30, a witness had given "false and evasive" testimony before a federal grand jury which in the trial court's opinion "obstructed the said grand jury in its inquiry and the due administration of justice." The federal circuit court of appeal determined the witness had directly responded with unequivocal answers which were clear enough so that if they were shown to be false, the witness would clearly have been guilty of perjury and subject to indictment for that offense. There, the Supreme Court said

> All perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial. It need not necessarily, however, obstruct

or halt the judicial process. For the function of trial is to sift the truth from a mass of contradictory evidence, and to do so the fact finding tribunal must hear both truthful and false witnesses. It is in this sense, doubtless that this court spoke when it decided that perjury alone does not constitute an "obstruction" which justified exertion of the contempt power and that there "must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty." *Ex Parte Hudgings,....* And the court added "the presence of that element [obstruction] must clearly be shown in every case where the power to punish for contempt is exerted."

*Michael,* 326 U.S. at 227–228, 66 S.Ct. at 80.

The contempt proceedings in the court below must fail for two reasons: (a) there is no substantial evidence the witness gave perjured testimony, and (b) her answers did not tend to impede the grand jury's investigation.

### A. No Proof of Perjury.

■ Clearly, there is no countervailing evidence or testimony before the grand jury which even disputes the witness's answers. Without some substantial evidence to contest her answers, no presumption of perjury is raised. Although the grand jury and the prosecuting attorney pursuing the matter suspect C.F. is "covering up" for someone, mere suspicion is not enough: there must be substantial evidence to support such speculation. There is none in this record.

### B. No "Obstruction" of Grand Jury Proceedings.

■ Next, C.F.'s answers to the motivation questions are clear and unequivocal, i.e., she testified she does not remember. If in fact she did recall her motivation at the time she was testifying, she was guilty of perjury and subject to prosecution. However, as noted above the fact of perjured testimony is not enough for the institution of contempt proceedings. The second element, obstruction of the grand jury's investigation, must also appear. In this record it does not.

Motive constitutes no part of the crime of arson. Only proof of general criminal intent in arson cases is required. *Myers v. State* (1981), Ind.App., 422 N.E.2d 745, 751. But for the State's grant of use and derivative use immunity, the grand jury had before it sufficient evidence to indict C.F. for the crime of arson without evidence as to her motive. Thus, it cannot be said the grand jury's investigation was impeded by her answers to the motivation questions.

The witness here understood she could avoid contempt proceedings by merely "manufacturing" a reason or motive which would have been acceptable to the grand jury. However, she refused to do so as it would be a lie on her part. (R. 220). Just as a witness may not be compelled to produce financial records he does not possess, *State ex rel. Pollard v. Criminal Court of Marion County* (1975), 263 Ind. 236, 329 N.E.2d 573, 586, we believe a grand jury may not compel a witness to answer its questions only in a manner which satisfies it. The inquisitional technique of repeated incarceration for contempt and reproduction of a grand jury witness to answer the same question over and over again until an answer is obtained which satisfies the grand jury is constitutionally proscribed. The Due Process Clause of the Fifth Amendment protects our citizens from such a technique. *Hudgings,* and *Michael, supra.*

Reversed and remanded with instructions to dismiss the contempt proceedings and discharge the defendant.

MILLER, P.J., and HOFFMAN, J., concur.