CRAWFORD, Chief Judge
(dissenting):
In keeping with Supreme Court precedent, and in the interest of judicial economy, I would apply Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and employ a harmless error analysis before returning the case for a DuBay hearing. See United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1962). Because counsel’s “ineffectiveness” had no impact on the fairness of Appellant’s proceeding, I would find that the error was harmless.
Both the Government and Appellant would benefit from a Strickland analysis in this case. Appellant’s allegation of ineffective assistance of counsel waives the attorney/client privilege and the confidential communications that transpired between Appellant and his counsel. United States v. McClain, 50 M.J. 483, 488 (C.A.A.F.1999). Thus, Appellant would enter the DuBay hearing without these safeguards and potentially subject to a future perjury prosecution. Moreover, applying Strickland avoids putting this Court into a speculative mode regarding how these inquiries should be handled in the future.
It is important to recognize at the outset that the purpose of the trial, as well as the roles of counsel, Appellant, and the trial judge, vary depending on, among other things, who the fact finder is in each case. I agree with the majority that the purpose of a trial is truth seeking “consistent with applicable constitutional, statutory, and ethical considerations.” 58 M.J. at 388.
The Supreme Court has long recognized that “[a]ll perjured relevant testimony is at war with justice, since it may produce a judgment not resting on truth. Therefore it cannot be denied that it tends to defeat the sole ultimate objective of a trial.” In re Michael, 326 U.S. 224, 227, 66 S.Ct. 78, 90 L.Ed. 30 (1945). A trial must rest upon truth finding and a defendant does not have *389 the right to present perjuried testimony. Nix v. Whiteside, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). When there is a trial by jury — but a finding by a trial judge of perjury beyond a reasonable doubt, or a firm factual basis for such a finding — the trial judge has the right to preclude the defendant from testifying at all. This purpose and its consequence must be recognized,[1] even though there is a dispute among the courts as to the roles of the various participants depending on the factual scenario. Because of this dispute, this Court should address each case on an individual basis.
“The military, like the Federal and state systems, has hierarchical sources of rights,” and chief among those sources is the Constitution of the United States. United States v. Lopez, 35 M.J. 35, 39 (C.M.A.1992). In rendering our decisions, we look to the highest source of authority, “unless a lower source creates rules that are constitutional and provide greater rights for the individual.” Id.
The Sixth Amendment to the Constitution provides: “In all criminal prosecutions, the accused shall enjoy ... the Assistance of Counsel for his defense.” In Strickland, the Supreme Court outlined a two-prong test to determine if counsel’s assistance to the accused was ineffective, and therefore violated the Sixth Amendment.
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment.
Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
466 U.S. at 687, 104 S.Ct. 2052 (emphasis added). The Court added that “if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should he followed.” Id. at 697, 104 S.Ct. 2052 (emphasis added).
In Nix, the Court determined that counsel’s threat to withdraw if the defendant perjured himself did not “establish the prejudice required for relief under the second strand of the Strickland inquiry.” Defense counsel is ethically obligated “to take steps to persuade a criminal defendant to testify truthfully, or to withdraw,” and in so doing does not deprive the defendant of his Sixth Amendment right to counsel. Id. at 173-74, 106 S.Ct. 988.
In Lockhart v. Fretwell, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), the Court again interpreted Strickland, opining that testing for prejudice involves more than a determination that the outcome would have been different. Rather, “[i]t focuses on the question whether a counsel’s deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.” Id. at 372, 113 S.Ct. 838. A proceeding is only unfair if counsel’s ineffectiveness “deprive[d] the defendant of any substantive or procedural right to which the law entitles him.” Id. “To set aside a conviction or sentence solely because the outcome would have been different but for counsel’s error may grant the defendant a windfall to which the *390 law does not entitle him.” Id. at 369-70,113 S.Ct. 838.
Applying this standard to the facts at hand, it is clear that Appellant was not prejudiced by counsel’s actions, as there was no impact at all on the fairness of the proceeding. As the chart below indicates, although Appellant was charged with twelve specifications, all of which he contested, he was found guilty of only four.
Setting aside Appellant’s testimony, the documents admitted at trial and the testimony from Appellant’s chain-of-command, civilian supervisor and peers, prove his guilt of the guilty findings below beyond a reasonable doubt of four of the twelve specifications:
[[Image here]]
Charge I and its specification — attempted larceny of over $369 worth of ink cartridges. Often Appellant was seen carrying his own personal computer but never a printer. When buying supplies for the supply store, he bought several ink cartridges costing more than $9 each that did not fit any of the units printers. Master Sergeant (MSG) Randall Hyde told Appellant not to buy these cartridges because they were useless. When these cartridges were found to be missing, MSG Hyde asked Appellant where they were and “he gave me a little smile on his face. Okay? And I told him to get my toner cartridges now and bring them back to the Supply Room.” The cost of these was approximately $369. Later, even though Appellant had been told not to buy any more, MSG Hyde noticed that three more cartridges were bought.
Charge II, specification 2 — absences. Appellant’s supervisor noted Appellant’s lunch breaks between September 1st and 17th, lasting more than an hour and a half without seeking permission from the supervisor or giving an explanation for the absence upon his return. Mrs. Sheila Speers McCaskill testified he “never took the [normal] one hour lunch,” but, rather, threehour lunches. Nor did Appellant seek permission for these extended breaks. Many times he was given several simple tasks that would take 15 to 20 minutes, but he would be gone at least an hour. During some of these instances, he took a government vehicle and Ms. McCaskill had no idea of his whereabouts.
Charge III, specification 2 and 3 — haircut orders. Brigadier General Lambert, Lieutenant Colonel (LTC) Kirk A. Moeller’s supervisor, was disappointed with Appellant’s appearance and haircut and told LTC Moeller to make sure that Appellant got a haircut. Appellant did not, and was counseled for unacceptable behavior by refusing to get a haircut. He was given a second order which he again disobeyed. A third order was given to him. This time to ensure he obtained a haircut, the acting first sergeant agreed to accompany Appellant to the barbershop. However, Appellant left the area after being told to wait by the acting first sergeant. The acting first sergeant checked the two barbershops at Patch Barracks and did not find Appellant on either occasion. When he eventually saw Appellant, he noted his haircut did not pass military standards. His appearance was so poor he was told not to return to the office until he had a proper haircut.
Moreover, given that Appellant was convicted of only four specifications, far from harming Appellant, counsel’s remedial actions, and the resultant sequence of proceedings, assisted in a relatively successful defense.
Given the absence of prejudice to Appellant, I would find harmless error and affirm the decision below. Accordingly, I dissent from the lead opinion.

. The full Article 39(a) transcript indicates that Appellant implicitly admitted his testimony was inconsistent.
MILITARY JUDGE: Now, they [Appellant’s defense counsel] haven’t told me anything more than that, but what I read into that — and this is what I’m reading into it — is that they expect or they’re thinking that you are going to testify inconsistently with what you have said before. Okay?
ACCUSED: Yes, ma’am.
MILITARY JUDGE: Just based on the fact that they want off the case, that’s the reason I think it is.
What I’m tellin you is this, that—
Captain [B], am I right? Is the court right that you do not even feel that you can ethically put your client on the stand and not even ask him any questions, and just — ?
CPT [B]: That’s correct, ma’am.
MILITARY JUDGE: Captain [M], is the same true for you?
CPT [M]: Yes, ma’am.
(Emphasis added.)