REINHARDT, Circuit Judge,
concurring:
Because I concur not only with the per curiam opinion but also with parts of Judge Kozinski’s and Judge N.R. Smith’s opinions (while disagreeing with other parts), I offer my separate views regarding what is in a fact a very simple case, as well as my thoughts concerning the proper construction of 18 U.S.C. § 1503, the obstruction of justice statute.
I.
My answer to the question with which Judge Kozinski begins his opinion, “Can a single non-responsive answer by a grand jury witness support a conviction for obstruction of justice under 18 U.S.C. § 1503?” is simple: No. My response would be the same regardless of the context in which the answer was given.
I reach the conclusion that Bonds’s Statement C was not material and thus could not (and did not) obstruct justice on different and narrower grounds than does Judge Kozinski. I do not agree, for example, with his opinion’s sweeping statements regarding the scope of the statute or with its intimations that nonresponsive answers that are not later cured by way of direct replies might constitute obstruction of justice. Similarly, I would not suggest that there may be a category of non-responsive or irrelevant answers that could be characterized as evasive or misleading and thus subject to differing treatment from other kinds of nonresponsive answers.
In my opinion, Statement C “cannot be. said to have the ‘natural and probable effect’ of interfering with the due administration of justice.’ ” United States v. Aguilar, 515 U.S. 593, 601, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995).[1] As Judge Kozinski himself puts it, “[it] says absolutely nothing pertinent to the subject of the grand jury’s investigation.” Kozinski Op. at 585. At most, Statement C was non-responsive, and in no respect could it (or did it) constitute a criminal act.
I concur with Judge Kozinski’s opinion as well as Judge N.R. Smith’s insofar as they state that Statement C could not have been material even if it had been false. A non-responsive answer that is false is “no more likely to impede the investigation than” a non-responsive answer that is true. Kozinski Op. at 586; see also N.R. Smith Op. at 588 n. 3. Indeed, even “perjured relevant testimony ... need not necessarily ... obstruct or halt the judicial process.” In re Michael, 326 U.S. 224, 227-28, 66 S.Ct. 78, 90 L.Ed. 30 (1945) (emphasis added) (explaining that contempt for “obstructing] the administration of justice,” under predecessor statute to 18 U.S.C. § 401, required more than a false statement). I also agree heartily with Judge Kozinski’s statements that “a certain number of non-responsive or irrelevant statements can be expected as part of the give-and-take of courtroom discourse,” and that we must consider the practicalities of “real-life witness examinations” when interpreting the statute. Kozinski Op. at 586. Moreover, in my view the appropriate course in the event of material false testimony is a perjury prosecution, not a prosecution for obstruction of justice. *591 In fact, the prosecutors tried to convict Bonds of perjury on several counts in this very proceeding, but had no better luck with the jury in that effort than they have had with this court on today’s appeal.
Unlike Judge Kozinski, I concur with the part of Judge N.R. Smith’s opinion that would hold that the “natural and probable effect” test articulated in United States v. Aguilar constitutes the proper standard for materiality with respect to § 1503.[2] I also concur with the part of Judge N.R. Smith’s opinion that would hold that under Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the natural and probable effect of Statement C is merely that counsel will have to ask follow-up questions. Faced with a statement that is “unresponsive on [its] face,” id. at 361, 93 S.Ct. 595, “[i]t is the responsibility of the lawyer to probe; testimonial interrogation ... is a probing, prying, pressing form of inquiry. If a' witness evades, it is the lawyer’s responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.” Id. at 358-59, 93 S.Ct. 595. In the instant case, the prosecutors did exactly that: they continued to press Bonds until he gave a direct answer.
The breadth of Judge Kozinski’s opinion, its unwarranted speculation regarding context, and its use of United States v. Thomas, 612 F.3d 1107, 1124 (9th Cir.2010), rather than Aguilar, 515 U.S. at 601, 115 S.Ct. 2357, to define the materiality requirement prevent me from joining more of that opinion than I have. As to Judge N.R. Smith’s opinion, I find it in several respects more persuasive than Judge Kozinski’s, especially in its use of the Aguilar standard for materiality and its discussion of Bronston. However, in the end, I cannot join that opinion either, for several reasons. One, I disagree that a flat refusal to testify may be prosecuted under § 1503. Two, I do not agree that non-responsive answers are in any respect “closely related to the destruction of evidence.” N.R. Smith Op. at 588. In my view, had Bonds refused to testify or continued to answer evasively, the appropriate course would have been a contempt proceeding, not an obstruction of justice prosecution. See In re Grand Jury Proceedings, Ortloff, 708 F.2d 1455, 1457-58 (9th Cir.1983). Three, I do not agree with the unnecessary and, in my view, incorrect discussion of misleading or evasive testimony or with his implicit endorsement of United States v. Griffin, 589 F.2d 200 (5th Cir.1979), as the proper rule for this circuit. See N.R. Smith Op. at 5.
Many fundamental questions persist regarding the meaning and scope of § 1503, notwithstanding our court’s broad construction of the statute in the past, see generally United States v. Rasheed, 663 F.2d 843 (9th Cir.1981), and the Supreme Court’s indication of a similar view in dictum in Aguilar, see generally 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520. Both Judge Kozinski’s and Judge N.R. Smith’s opinions have much to commend them. However, neither succeeds in its efforts to answer the critical questions regarding the purpose and role of the statute, in Judge N.R. Smith’s ease at least, partly because of currently conflicting circuit law that he may, understandably, be reluctant to overrule in light of the Supreme Court dictum in Aguilar. See N.R. Smith Op. at 587 n. 2. Rather than attempting to resolve those problems in this case, however, I would simply hold that Bonds’s answer in no way *592 constitutes a violation of § 1503 because it is non-responsive and thus nonmaterial, and that his prosecution for the charged offense was therefore wholly unwarranted under the law. I would leave the rest of the speculation and the unnecessary, if not erroneous, analysis in my colleagues’ opinions to another time, preferably after the Supreme Court has spoken.
II.
My own view is that § 1503 should not be construed as covering testimony of witnesses at court proceedings. I explain my reading of the statute only briefly in light of what appears to me to be the Supreme Court’s current view of the law — a view that also causes me to refrain from suggesting at this time that we overrule Ninth Circuit cases that construe § 1503 overly broadly, see Rasheed, 663 F.2d at 851-52, or that apply it to in-court testimony. See Thomas, 612 F.3d at 1125-29. Although our court has previously affirmed a § 1503 conviction based on in-court testimony, see id., the Supreme Court has never done so and has indicated its view only in dictum contained in Aguilar. See 515 U.S. at 600-01, 115 S.Ct. 2357. Given the history and circumstances of § 1503,1 would hope that the Court would not follow the Aguilar dictum when it confronts the issue directly.[3]
The history underlying § 1503 strongly supports the conclusion that in-court testimony is not a subject of criminal sanctions under that statute. The predecessor to § 1503 was originally enacted in 1831 in response to abuse of the contempt power by a federal district judge who had imprisoned a man for publishing a criticism of one of his opinions. Nye v. United States, 313 U.S. 33, 41, 61 S.Ct. 810, 85 L.Ed. 1172 (1941). In establishing the crime of obstruction of justice, Congress created, as Nye put it, a “geographical” divide between the conduct constituting that crime and conduct subject to contempt: “misbehavior of any person or persons in the presence of said courts, or so near thereto as to obstruct the administration of justice” constituted contempt under section 1 of the Act of March 2, 1831, whereas persons outside of court who “corruptly, or by threats of force, obstruct, or impede, or endeavor to obstruct or impede, the due administration of justice” committed the crime of obstruction of justice under section 2. Id. at 46-49, 61 S.Ct. 810 (emphasis added). Section 1 survives today as 18 U.S.C. § 401, the contempt statute, while section 2 became the clause of § 1503 at issue in this case. Thus, the original understanding of the crime of obstruction of justice was that it applied to conduct outside the presence of a court. Such was and is the intent of Congress, and “[w]e cannot by process of interpretation obliterate the distinctions which Congress drew.” Nye, 313 U.S. at 50, 61 S.Ct. 810.
When one considers the other criminal statutes available to punish in-court misbehavior by a witness — that is, misconduct during testimony — this “geographical” delineation, id. at 48, 61 S.Ct. 810, whereby only out-of-court conduct constitutes obstruction of justice under § 1503, makes sense. A false statement made during in-court testimony constitutes perjury. See 18 U.S.C. §§ 1621, 1623. A failure to answer a question or a material evasion that the witness refuses to correct during in-court testimony constitutes contempt. I *593 seriously doubt that the obstruction of justice statute was intended to duplicate these crimes. Something more than a witness merely lying or being non-responsive during testimony is required in order to violate § 1503. Otherwise, the crime of obstruction of justice would be to that extent wholly superfluous.
More important, the argument for coverage of such actions under § 1503 hinges entirely on the single word “corruptly.” The other specified means of obstructing justice enumerated in that section — “by threats or force, or by any threatening letter or communication” — when viewed in context dictate the opposite conclusion: “corruptly” does not describe the in-court conduct of a witness, but rather, like those enumerated means, describes the conduct of a third party who seeks to obstruct the proceedings. The specified means necessarily describe the attempts of a third party to affect the judicial proceedings by corrupt means. As Judge W. Fletcher explains, the interpretative canon noscitur a sociis — literally “[i]t is known from its associates” — tells us that “the meaning of questionable or doubtful words or phrases in a statute may be ascertained by reference to the meaning of other words or phrases associated with it.” Black’s Law Dictionary 1060 (6th ed.1990). Because obstructing proceedings by “threats or force” plainly refers to the conduct of persons outside of court who seek to obstruct the proceedings and not to the witness who is testifying in court in the proceedings, “corruptly” must similarly be understood as referring to the means used by third parties to influence, obstruct, or impede proceedings, and not to in-court testimony by a witness who may well be the object but not the subject of the corrupt tactics.
Even if § 1503 covered in-court conduct, “corruptly” would, under the noscitur a sociis canon, as well as under any other reasonable means of statutory construction, require a greater magnitude of misconduct than simply giving a false or non-responsive answer to a question. Clearly, a mere lie or evasive answer is not akin to using threats or force to cause another to lie. Indeed, the Supreme Court has on occasion recognized that lies and evasive answers are part and parcel of the process of uncovering the truth through adversarial witness examination. See Bronston, 409 U.S. at 358, 93 S.Ct. 595; Michael, 326 U.S. at 227-28, 66 S.Ct. 78. The use of threats or force to impede a proceeding, by contrast, is not a customary incident of that process and constitutes a far more serious offense. “Corruptly” in the obstruction of justice statute covers conduct at the same level of obstruction as the use of threats or force and may not properly be interpreted so as to bring a mere lie or evasive answer by a witness within the scope of the statute. Although I am not certain that “corruptly” is limited to bribery as Judge W. Fletcher' contends, I am wholly confident that it does describe conduct of that magnitude and not a simple lie or evasive answer by a witness during in-court testimony.
For the reasons discussed above, I would hope that the Supreme Court would revisit its dictum in Aguilar and would conclude that § 1503 does not cover a witness’s in-court testimony. After all, Congress has enacted criminal statutes other than § 1503 that sufficiently address a witness’s in-court conduct. The problems created by the misuse of § 1503 by overeager prosecutors to punish witnesses for what they say in court are all too evident from the facts of this case. It is time for them to cease using that section as a substitute for vigorous cross-examination or for the criminal statutes that properly apply to in-court testimony.
*594 In short, this case involves nothing more than an irrelevant, rambling statement made by a witness during the course of a grand jury investigation. Statement C was not material and could not possibly have interfered with the due administration of justice. I therefore concur in the per curiam opinion (and the parts of Judge Kozinski’s and Judge N.R. Smith’s opinions that I have identified above). Bonds’s conviction for obstruction of justice cannot stand and he may not be retried on the same charge.

. See infra p. 591 and note 2.

. Cf. Kozinski Op. at 585 (describing materiality standard as whether conduct "has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body”).

. In this respect my approach is somewhat less bold than Judge W. Fletcher’s. I do not believe that we need confront the Aguilar dictum in order to reverse, so, as a prudential matter, I would not rely on the far broader ground discussed in this section of my concurrence. Nevertheless, should it become necessary in a future case to address the Aguilar dictum, I reserve the right to consider further the question of its binding nature.